[No. 30262.   *En Banc.*   April 15, 1948.]

HILDA KOSANKE, *Respondent and Cross-appellant,* v.
REINHOLD KOSANKE, *Appellant.*[1]

[1]Reported in 192 P. (2d) 337.

*Cameron Sherwood* and *George H. Freese,* for appellant.

*G. E. Lovell,* for respondent and cross-appellant.

HILL, J.—Hilda Kosanke commenced an action for divorce against Reinhold Kosanke on September 3, 1946, on the grounds of cruelty and that he was then imprisoned in the Washington state penitentiary. She was awarded an interlocutory decree of divorce on the latter ground on February 19, 1947.

They had been married in 1933 and had lived together on a 720-acre wheat ranch which Reinhold Kosanke had acquired for approximately eleven thousand dollars, and which was conceded to be his separate property. Three boys were born of this marriage, who were eleven, ten, and nine years of age at the time the case was tried in December, 1946. The parties, by hard work and thrift, and by the enhancement of land values, had accumulated property worth approximately seventy-five or seventy-eight thousand dollars at the time of the trial. This included the 720-acre wheat ranch, then valued at thirty-six thousand dollars.

From the time Mr. Kosanke entered the penitentiary, in August, 1945, until the spring of 1946, the frequent letters from his wife were filled with expressions of affection, regret at his absence, and longing for his return. Her letters, apparently coincident with the coming of one Ed Delzer to help with the ranch work, then became businesslike instead of affectionate, and critical instead of endearing. Delzer moved onto the ranch and was living there at the time of the trial. Mr. Kosanke relied upon his wife's suddenly changed attitude toward him and her statements that she loved Delzer and wanted to marry him, together with Delzer's having taken up his residence in the Kosanke

home, as constituting cruel treatment and personal indignities entitling him (Kosanke) to a divorce.

The trial judge made no finding on Mrs. Kosanke's charge of cruelty but granted her a divorce specifically and solely on the ground that Mr. Kosanke was imprisoned in the state penitentiary at the time the action was commenced. He granted Mr. Kosanke a divorce against her on the ground of cruelty and personal indignities rendering his life burdensome, "in that she has associated with other men during the time that the defendant has been confined in the penitentiary." Each of the parties has appealed from that portion of the interlocutory decree granting the other a divorce, and, to avoid confusion, we will continue to refer to the parties as Mr. and Mrs. Kosanke.

■ Mr. Kosanke contended that the letters written to him by Mrs. Kosanke during the first six months after he went to the penitentiary, her frequent visits there to see him, and her strenuous efforts to secure his release during that period constituted a condonation. The trial judge commented upon the fact that these letters and her conduct did indicate that she had no desire for a divorce until she became infatuated with Delzer, and that he believed that such infatuation was the motive behind the action for divorce, but, he said,

". . . we do not think we can take into consideration the motive of the divorce because the defendant is in the Penitentiary and we do not believe the doctrine of condonation applies."

We quite agree with the trial judge that the doctrine of condonation has no application where the divorce is sought because of:

"The imprisonment of either party in a state penal institution if complaint is filed during the term of such imprisonment" (Rem. Rev. Stat., § 982(7) [P.P.C. § 23-1]);

nor is the motive material. We therefore affirm the granting of a divorce to Mrs. Kosanke upon that ground.

■ As to Mrs. Kosanke's cross-appeal against awarding a divorce to Mr. Kosanke, the trial judge, while exonerat-

ing her "from any inference even, of immoral conduct," does say in his memorandum decision:

"It was only after Mrs. Kosanke became interested in Ed Delzer that she thought it desirable and necessary to divorce the defendant and I am satisfied that they had become infatuated with each other, and that that is the motive behind the desire for the divorce. ʼ The testimony would also indicate that Mrs. Kosanke is not too careful in keeping her own conduct above reproach. It is evident that it is not conducive to the welfare of the children to have a single man residing in the home. The children are in school a great part of the time, and Mrs. Kosanke being seen very often in the company of Ed Delzer, would be bound to cause a great deal of gossip all to the children's detriment."

The same gossip would likewise be detrimental to a husband's peace of mind, as would the presence in his home of a man with whom his wife was infatuated. We have no difficulty in spelling out of these statements by the trial judge (and they are amply substantiated by the evidence), together with Mrs. Kosanke's change of attitude toward her husband as evidenced by her letters, a finding of cruel treatment and personal indignities rendering his life burdensome. We therefore affirm the granting of a divorce to Mr. Kosanke on that ground.

Mrs. Kosanke was found to be a fit and proper person to have the custody of the children, and they were awarded to her. Mr. Kosanke, being then in the penitentiary, was not in a position to contest that portion of the interlocutory decree even if he were minded so to do. He does, however, allege error in the distribution of the property, primarily in that the 720-acre wheat ranch, which was his separate property, is awarded to Mrs. Kosanke until the youngest child becomes of age,

" . . . at which time the said property is to be sold and the proceeds thereof divided on the basis of $\frac{1}{3}$ to the defendant, Reinhold Kosanke, and $\frac{2}{3}$ to the plaintiff, Hilda Kosanke."

The trial judge, while recognizing that the greater part of the property was the separate property of Mr. Kosanke,

was of the opinion that thirteen years of hard work and thrift and the raising of three children entitled her to approximately $36,400 worth of the property, community and separate, before the court for distribution. The property distributed to her, together with the approximate values thereof, was as follows:

| | |
|---|---:|
| Household goods, furniture, and fixtures located in the house on the 720-acre wheat ranch (including furniture brought to the ranch from a house in Ritzville) | $2,500.00 |
| Farming outfit and equipment, including tractor, truck, and combine | 4,500.00 |
| 500 bushels of seed wheat | 900.00 |
| 1940 Oldsmobile sedan | 1,000.00 |
| Cash | 3,500.00 |
| Two-thirds interest in the 720-acre wheat ranch | 24,000.00 |
| Total | $36,400.00 |

Mr. Kosanke was freed of any obligation to support the children; but Mrs. Kosanke was to have possession of, and the rents, issues, and profits from, the 720-acre wheat ranch until the youngest child becomes twenty-one years of age, or for a period of some eleven years. She has already had the benefit of the 1947 wheat crop from the 720-acre ranch, and from another quarter section of wheat land awarded to Mr. Kosanke.

■ While we believe that the trial court was generous in awarding to Mrs. Kosanke almost half of both the community and the separate property, we cannot say that, under the circumstances, it was an abuse of discretion. However, the applicable statute, Rem. Rev. Stat., § 989 [P.P.C. § 23-23],

" . . . simply, but emphatically, requires the court to make a 'just and equitable' disposition of the property, having regard to the merits of the parties, the conditions in which they will be left by the divorce, the particular sources through which the property was acquired, and the burdens imposed upon it for the benefit of the children." *Holm v. Holm*, 27 Wn. (2d) 456, 178 P. (2d) 725.

It was neither just nor equitable to take from Mr. Kosanke his means of livelihood, to wit, the 720-acre wheat

ranch, together with the farm equipment necessary for its operation. We arrive at this conclusion not only because it was his separate property but because, at practically fifty years of age, it represents his best opportunity to pursue the only occupation suitable to him in view of his health, age, and experience. It would be an exceptional circumstance which would warrant taking from a man his means of livelihood in the division of property in a divorce proceeding, especially when adequate provision can be made for the wife and children from other property. The fact that the man is a felon and has served a term in the penitentiary does not justify carrying the punitive processes of the law into the division of property in a divorce proceeding, and in doing so the trial court abused its judicial discretion. (Mr. Kosanke has now been paroled from the penitentiary.)

The decree should be modified by awarding the 720-acre wheat ranch and the farming outfit and equipment, including the tractor, truck, and combine, to Mr. Kosanke, together with the furniture which had been acquired for the house on the ranch. (All the furniture on the ranch property which came from the house in Ritzville should be awarded to Mrs. Kosanke.)

Mr. Kosanke should be permitted to take over the operation of the farm immediately upon the going down of the remittitur, and should be entitled to the proceeds of the 1948 wheat crop; but Mrs. Kosanke should be compensated for any labor or expenditure in connection with that crop, and the trial court should take testimony to determine what the amount of that compensation should be.

This modification of the decree takes from Mrs. Kosanke a two-thirds interest in the 720-acre ranch valued at twenty-four thousand dollars, the farming outfit and equipment valued at forty-five hundred dollars, and furniture valued at one thousand dollars, or a total of twenty-nine thousand five hundred dollars. (In allowing Mrs. Kosanke a credit of one thousand dollars for the furniture that had been acquired for the house at the ranch, we have adopted Mr. Kosanke's valuation, Mrs. Kosanke having tes-

tified that there was "not very much there.") In lieu thereof, she should receive the house and four lots in Ritzville valued at sixty-two hundred fifty dollars, leaving twenty-three thousand two hundred fifty dollars still due her, which should be paid thirty-two hundred fifty dollars in cash forthwith and the remaining twenty thousand dollars at the rate of two thousand dollars a year for the next ten years, the first payment to be made November 1, 1948, and payments to be made on that date each year for the succeeding nine years; provided, however, that on the death of Mrs. Kosanke before the payments are completed, any unpaid balance is to be an asset of her estate; and provided, further, that on the death of Mr. Kosanke before the payment of the twenty thousand dollars, the unpaid balance thereof shall constitute an obligation to be paid by his estate.

■ The decree should be further modified to provide that Mr. Kosanke should pay Mrs. Kosanke fifty dollars a month for the support of each child, with payment to be made on the first day of the first month after the going down of the remittitur and on the first day of each month thereafter; payments for each child to terminate on his coming of age or in the event of death or emancipation prior thereto. The decree should be so worded that Mr. Kosanke will be entitled to claim the children as dependents for income tax purposes.

The annual payments of two thousand dollars to Mrs. Kosanke and the payments for the support of the children should be liens against the 720-acre wheat ranch; and the decree should further provide that should Mr. Kosanke desire to sell the ranch within the period that such payments would continue, a sufficient amount to meet the maximum requirements of the portion of the decree relative to payments then uncomplied with is to be paid into the registry of the court and disbursed therefrom to Mrs. Kosanke in accordance with the terms of the decree.

So that we will not be reminded of that fact in a petition for rehearing, we state that we are aware that Mr. Kosanke will be having the use of the unpaid balances of Mrs.

Kosanke's money and that no provision is made for interest thereon. However, since Mr. Kosanke is in effect paying Mrs. Kosanke for a two-thirds interest in his own property, and since, under the terms of the original interlocutory decree, she would not have received the money for her interest in the ranch for eleven years, we are of the opinion that interest is uncalled for. In addition, Mrs. Kosanke has had the full benefit of the 1947 wheat crop, with prices on wheat soaring to astronomical heights.

We are of the opinion that the modification directed gives Mrs. Kosanke the amount of the combined community and separate property to which the trial court thought she was entitled and makes adequate provision for the support of the children, without taking from Mr. Kosanke his own property, which represents his means of livelihood and his best chance for rehabilitation.

If Mrs. Kosanke still feels, as contended in oral argument, that the children are better off on the farm than in Ritzville, we see no reason why they should not spend considerable time on the farm with their father, at least during school vacation periods. Mrs. Kosanke's letters to him during the first six months of his imprisonment indicated affection and concern for him on the part of the children, and the letters of the oldest boy, of which there are several in the record, together with a valentine, are eloquent testimony of his love for his "Dear Daddy."

██ Mr. Kosanke makes one other assignment of error, *i.e.,* that the trial court erred in directing him to pay to Mrs. Kosanke's attorney the sum of five hundred dollars, as attorney's fee and costs on this appeal. We have held that the trial court may allow attorneys' fees and costs on appeal, after notice of appeal. See *State ex rel. Brown v. Superior Court,* 190 Wash. 572, 69 P. (2d) 811. In the instant case, we cannot review the question of whether the trial court properly exercised its discretion in making such an allowance, because the affidavits which the court considered before making the order complained of are not included in the statement of facts, and the order must therefore be affirmed.

The interlocutory decree appealed from is affirmed except as to the portions thereof having to do with the distribution of the property and the support of the children; and the trial court is directed to modify the portions of the decree dealing therewith in accordance with the views herein expressed. The trial court is further directed to take testimony as to the amount which should be allowed Mrs. Kosanke for labor and expenditures in connection with the 1948 wheat crop, and to include in the decree an order directing the payment of that amount to her by Mr. Kosanke. Neither party shall recover costs on this appeal.

MALLERY, C. J., and BEALS, J., concur.

MALLERY, C. J. (concurring)—I feel wholly unable to foresee conditions and events eleven years hence. For this reason, I am reluctant to freeze the property of the parties in an undistributed status for that length of time. What may be equitable now may not be equitable then. I prefer to predicate an equitable disposition of the property upon the present known facts and circumstances rather than to attempt to predict what will be equitable at some future date. I therefore concur with the opinion of Judge Hill.

STEINERT, J. (concurring)—For the reason stated above by Judge Mallery, I concur in the result of the majority opinion wherein, and to the extent that, the interlocutory order of the trial court is affirmed in part and modified in part.

ROBINSON, J., concurs with STEINERT, J.

MILLARD, J. (dissenting)—In November, 1944, Reinhold Kosanke was convicted of the crime of taking indecent liberties with his niece, who was then thirteen years old. He was imprisoned in the state penitentiary, and, during the term of his confinement, his wife obtained a divorce from him on the ground that her husband was imprisoned in a state penal institution.

Prior to the intermarriage of the parties in this action, the husband owned separate property, consisting of a wheat farm of 720 acres, for which he paid approximately eleven thousand dollars. At the time of the trial of this cause, that

property was of a value greatly in excess of the price paid for it by the husband, who also owned, as separate property, an undivided one-sixth interest in another tract of 480 acres of wheat land. Through the joint efforts of this marital community, and the proceeds of the separate property of the husband, the community assets, at the time of the trial, amounted to approximately seventy-eight thousand dollars.

The trial court awarded to the wife thirty-five hundred dollars in cash, seed wheat, and other property of the value of thirty thousand dollars, and awarded to the wife the home place, from which she should have all the rents, issues, and profits accruing therefrom until the youngest child of the parties attained the age of twenty-one years, at which time the property was to be sold and the proceeds divided, one third to the husband and two thirds to the wife. This provision of the order is subject to any mutual agreement the parties might make respecting the property; that is, the wife was awarded property of less value than thirty-five thousand dollars, and was required to support her three children. The husband was awarded property of about the same value.

Since entry of the interlocutory order, the wife delivered to the husband wheat from the farm, which sold for fourteen thousand dollars. In the main, the argument that the disposition of the property is inequitable, is addressed to the disposition of the 720-acre wheat farm, which was the separate property of the appellant.

For the reason that the remainder of the property was divided equally between the parties and no support or maintenance was ordered for the minor children, the court awarded to the wife possession, and profits from the operation, of the wheat farm until the youngest child attains his majority, which will be within ten or eleven years. During that time, this property may not be sold or encumbered by either of the parties, but, by mutual agreement, disposition may be made of the property. The wife was given use of appellant's share of the farm for about eleven years, in lieu of any maintenance or support of the minor children.

While correctly observing that the doctrine of condonation is inapplicable, as the divorce was sought by respondent because of imprisonment of her husband in a state penal institution at the time she filed her complaint in the divorce action, and that respondent's motive in seeking a divorce is not material, the majority stresses the comment of the trial court respecting the desire of respondent for a divorce after she became infatuated with a man employed to work on the farm. Respondent, with her three children, went fishing twice, at which times this farm hand accompanied them. He also accompanied respondent and her sister twice on trips to Spokane, when respondent was called to that city by business or sickness.

The trial court exonerated respondent "from any inference even, of immoral conduct." Her association with the hired man has nothing to do with this case, and hardly constitutes the cruelty of which appellant, who, as a result of his perverted sexual desires, became a felon, may complain. The majority sees no reason why the three sons (ages thirteen, twelve, and eleven years) born of the union of respondent and appellant, "should not spend considerable time on the farm with their father, at least during school vacation periods." It is unconscionable to even permit these children, during the formative years of their lives, to associate with appellant. The fact, which the majority opinion emphasizes, that the oldest son loves his "dear daddy," an ideal which exists only in his imagination, may be "eloquent testimony of his love" for his father. I am convinced, as was the trial court, that they would be susceptible to the evil influence of that father. I agree that appellant should not be further punished because of his crime, but neither should he be rewarded and his wife penalized. He should be, however, quarantined, so far as his young sons are concerned. However poignant his agony, of which there is no evidence, because of denial of association with those lads, that pain should be discounted and held for naught in considering the welfare of the three sons, who may, if not subjected to contact with their father, become honored members of their community.

The trial court stated that, as appellant had been a farmer all his life, ordinarily the court would grant the 720-acre farm to him, but that, under the circumstances, it would not be to the interest of appellant, nor would it be to the interest of the children, to have him back on the farm. The trial court was convinced that the unsavory moral delinquencies of appellant manifested a depravity of mind which was such that it would be to appellant's welfare and that of the children for appellant not to be even in that community.

Respondent has demonstrated that she is a capable woman and able to successfully operate the farm, and, as observed by the trial court, "of course the farm is a much better place for the children."

We have repeatedly held that a wide discretion is vested in the trial court in making disposition of the property of the parties to a divorce action, and that the trial court's determination will not be disturbed except for manifest abuse of discretion. Further, although most of the property is the separate property of the husband, it is the trial court's duty, regardless of that fact, to make such a division as to the court appears just and equitable, having regard to the merits of the respective parties and to the situation in which they are left by the divorce. *Luithle v. Luithle,* 23 Wn. (2d) 494, 161 P. (2d) 152.

In the case at bar, the husband received fourteen thousand dollars in cash, and he has other farm land to which he may devote his ability as a farmer. The wife is a practical farmer. She has three boys who are now of an age when they should be busy on the farm. If the mother and three boys move to the city, there to exist on the maintenance provided by the father, as directed by this court, the boys will be idle. They could be of assistance to their mother on the farm and could develop into prosperous farmers. By the time they arrive at their majority, and the farm property is divided between the father and mother, they will be competent to maintain themselves in a field in which they will be efficient.

The trial court was more concerned, as we should be, with the welfare of the three children than with the matter

of provision for the support of the husband or wife. We are convinced, as argued by counsel for respondent, that, aware of the handicap at the very beginning of life of these children, by reason of the fact that their father is a felon and manifestly of depraved mind, the court made the division and awarded the wheat farm to the wife for the period of eleven years for the purpose of making these boys self-supporting, respectable citizens.

The interlocutory order should, in all things, be affirmed.

SIMPSON, SCHWELLENBACH, and JEFFERS, JJ., concur with MILLARD, J.

May 28, 1948. Petition for rehearing denied.