IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| In the Matter of the Marriage of | No.  47557-0-II |
|---|---|
| GREGORY LACKEY, Appellant, | |
| and | |
| CAROLYNN LACKEY, Respondent. | UNPUBLISHED OPINION |

WORSWICK, J. — George Lackey appeals the trial court's imposition of a 12 percent interest rate on a property-equalizing monetary judgment awarded against him in a decree of legal separation.  Lackey contends that because the judgment was otherwise secured, the statutory judgment interest rate should not have been a presumptive rate, and that the trial court erred by imposing a 12 percent interest rate.  We disagree and affirm.

FACTS

George Lackey and Carolynn Pavlock,[1] married in 1998, separated in 2010, and legally separated by formal decree in 2015.  They are licensed chiropractors.  At the time of legal separation, the couple's primary community asset was a chiropractic practice they jointly operated throughout their marriage.  The trial court valued the chiropractic practice at $233,582. The court awarded the practice to Lackey, but awarded an equalizing judgment of $114,291 to Pavlock against Lackey.  The court imposed interest on the judgment at a rate of 12 percent per

---

[1] Carolynn Pavlock's married name was Carolynn Lackey.

year until the judgment was paid in full. The court classified the judgment as a judicial marital lien secured by a UCC (Uniform Commercial Code) security instrument, which is nondischargeable in bankruptcy.

Lackey moved the trial court to reconsider the interest rate on the monetary judgment. The trial court denied the motion.

Throughout the reconsideration hearing, the trial court emphasized its concern that Lackey would default on the judgment. Lackey explained to the trial court that he had recently sought personal loans but could not secure a loan with lower than a 29 percent interest rate. In response, the trial court commented, "So, if I want to protect this lady from money he owes her, she deserves, because the likelihood of default or not getting paid, she should be entitled to much more than 12 percent." Verbatim Report of Proceedings (Mar. 6, 2015) (VRP) at 10-11. The trial court also stated, "He was awarded the business. I've heard absolutely nothing that the business is suffering. So, if the business is improving in value, then she's really not getting half the value of the business when he ultimately pays it. Her only protection is the interest rate." VRP (Mar. 6, 2015) at 11-12.

The trial court set the minimum monthly payment on the judgment at $1000, and acknowledged that at 12 percent the monthly interest would be about $1000. The court explained:

> [W]hat we've got in this situation is we've got a husband and wife who opened, operated, created this thriving business which does make substantial income. . . .
> [Lackey's monthly income is] 10,800 net. So he makes substantial amounts of money each and every month.
> [Pavlock] wants to start her own business. And without the equity in their joint business, she's a little hamstrung. . . .
> And although it's not—interest does not set for an incentivizing reason, interest is set because of the risk associated.

> Husband has shown already in this two or three-month period that he's a substantial risk at payment on this.
>
> . . . .
>
> All I've got is what I've got. I've got him not making payments that he was ordered to make. He's making 10,800 net a month.
>
> . . . .
>
> I'm denying your request to reduce the interest rate. Interest for monies owed to a particular person are for multiple reasons. One of them is to assess the risk to the borrower—the risk of the borrower and the risk to the lender, and also to compensate the lender for the loss of the income that she would otherwise be entitled to.
>
> There's no question in this case in my mind, and I believe it's fair and equitable to set the interest rate at 12 percent like I did before, because the wife in this case needs that money. She needs that money and she needs to make sure it's paid in order to move herself forward. For all the reasons we've talked about, it makes perfect sense to set it at 12 percent.

VRP (Mar. 6, 2015) at 20-27.

## ANALYSIS

Generally, we review a trial judge's decision setting the interest rate on a judgment for abuse of discretion. *In re Marriage of Knight*, 75 Wn. App. 721, 731, 800 P.2d 71 (1994). In most instances, the trial court must enter a judgment in compliance with RCW 4.56.110(4), which requires that interest on judgments accrue at the maximum rate permitted under RCW 19.52.020. *In re Marriage of Harrington*, 85 Wn. App. 613, 630-31, 935 P.2d 1357 (1997). At the time of judgment, the maximum rate permitted under RCW 19.52.020(1)(a) was 12 percent per annum. In a dissolution proceeding, however, the trial court has discretion to reduce or even eliminate the interest rate for deferred payments that are part of the property distribution. *Berol v. Berol*, 37 Wn.2d 380, 383, 223 P.2d 1055 (1950); *In re Marriage of Stenshoel*, 72 Wn. App. 800, 811-12, 866 P.2d 635 (1993). But the court abuses its discretion if it fixes an interest rate below the statutory rate "without setting forth adequate reasons for the reduction." *Harrington*, 85 Wn. App. at 631.

3

A.    *Presumptive Rate*

Lackey first argues that no presumptive interest rate applies to *secured* judgments in marital dissolution cases.  We disagree.

Lackey acknowledges that *Harrington*, 85 Wn. App. at 630, and *Stenshoel*, 72 Wn. App. at 811-12 held that the trial court must set interest at the statutory rate in most instances. However, he contends that the last 52 years of Washington case law on the issue conflicts with the Supreme Court's decisions in *Root v. Root*, 64 Wn.2d 360, 363, 391 P.2d 962 (1964) and *Kosanke v. Kosanke*, 30 Wn.2d 523, 535, 192 P.2d 337 (1948), where the trial courts imposed no interest on secured monetary judgments in dissolution actions.  It is true that in both *Kosanke* and *Root* our Supreme Court upheld the trial courts' decisions to not impose any interest on the secured judgments.  But nothing in the holdings suggests those decisions were premised on the fact that the judgments were secured.

In *Kosanke*, our Supreme Court amended the trial court's division of property, ruling that the trial court's division was inequitable.  The Supreme Court modified the decree, awarding the family farm to the husband and awarding an equalization payment to the wife.  The Supreme Court considered many factors when it refused to impose interest on the equalization payment, including that (1) a two-thirds share of the farm in question was awarded to the wife even though the farm was the husband's separate property, (2) under the original decree, the wife would not have received interest for eleven years, and (3) the wife had collected the proceeds of a wheat

crop. 30 Wn.2d at 530. A fair reading of *Kosanke* shows that the appellate court considered the case as a whole and did not base its interest ruling on the fact that the obligation was secured.[2]

In *Root*, our Supreme Court acknowledged the wife's argument that a six percent interest rate—the statutory judgment rate at the time— should have been imposed, but did not address the merits of her argument. Rather, the court made a "conclusory evaluation" of the fairness of the trial court's property division, noting that "the husband, in terms of monetary values and financial obligations, has more reason to complain than the wife," and holding that the end results seemed even given the broad discretion left to trial courts in such matters. 64 Wn.2d at 362.

In the years since *Kosanke* and *Root*, Washington courts have consistently relied on *Berol*, 37 Wn.2d 380, when reviewing interest rates in dissolution judgments. *See Stenshoel*, 72 Wn. App. 800; *Knight*, 75 Wn. App. 721; *Harrington*, 85 Wn. App. 613. In *Berol*, the court held that the trial court abused its discretion in refusing to award the wife interest on deferred money judgment. 37 Wn.2d at 382. The court explained that the proper rate should be "that which judgments ordinarily bear" pursuant to statute. 37 Wn.2d at 382.

Lackey argues that the *Berol* court imposed interest because the monetary judgment in that case was unsecured. However, the court's reasoning in *Berol* did not turn on whether the judgment was secured, but rather on the fact that the court saw "no good reason why the husband

---

[2] We note that our courts reviewed dissolution cases significantly differently at the time of *Kosanke*. Prior to modern dissolution statutes, Washington generally required a party to be at "fault" before a court would award a divorce, and "fault" was one of the factors the trial court could consider in making a property distribution. *See Baker v. Baker*, 80 Wn.2d 736, 748, 498 P.2d 315 (1972).

should have the use of the wife's money in his business without the payment of interest thereon."

37 Wn.2d at 382. Specifically, the court held:

> [W]hile in a divorce case the trial court may, in a proper exercise of its discretion, reduce the rate or eliminate interest entirely on deferred payments which are part of the adjudication of property rights, there should be some apparent reason for giving one spouse the use, for business purposes, of the money of the other without interest or at less than the statutory rate.

37 Wn.2d at 383.

Since *Berol*, Washington courts have turned to the statutory judgment interest as the presumptive benchmark for interest rates in cases regardless of whether the judgments were secured or unsecured. For instance, just three years after *Root*, our Supreme Court modified a property judgment in *DeRuwe v. DeRuwe*, 72 Wn.2d 404, 433 P.2d 209 (1967). There the court awarded interest at six percent despite the fact that the judgment was secured by a lien on the property. 72 Wn.2d at 410.

Likewise, Washington Court of Appeals cases have treated secured judgments and unsecured judgments similarly when setting interest rates. In *Stenshoel*, 72 Wn. App. at 812, Division One of this court held that the trial court erred by setting an interest rate on a secured judgment below the statutory interest rate. The court explained, "[T]he case law clearly states that the trial court must give adequate reasons when it provides for less than the statutory rate." 72 Wn. App. at 812. The court then concluded that the trial court had abused its discretion in providing for inadequate interest on the property distribution payments. 72 Wn. App. at 812. In *Harrington*, 85 Wn. App. at 631-32, we expressly declined to decide whether "there may be any viable distinction between a secured equalization note and a money judgment for purposes of applying the statutory interest rate on property awards in a marital dissolution proceeding,"

electing instead to adhere to the rule that the trial court must state its reasons for awarding a party any less than the statutory interest rate.

Lackey attempts to bolster his position by arguing that because the statutory judgment interest rate is so high (12 percent), its use as the presumptive rate is too severe. We reject his argument because determining the statutory judgment interest rate is a role for the legislature. In particular cases where the trial court determines the presumptive rate too severe, the court maintains the discretion to deviate as it sees fit, so long as it provides adequate reasons for the deviation. The 65 years of precedent on this issue is clear—while courts maintain discretion in the dissolution context to reduce or eliminate that interest rate, such discretion is not contingent upon whether or not the judgment is secured, but rather is a fact-specific analysis of the case left to the trial court's sound discretion. *Berol*, 37 Wn.2d at 383.

B. *Abuse of Discretion*

Lackey contends, in the alternative, that the trial court abused its discretion by imposing a 12 percent interest rate. Specifically, he argues that by imposing a 12 percent interest rate, the trial court destroyed its intended even distribution of property, and that the trial court relied on improper evidence in determining the interest rate. We disagree.

RCW 26.09.080 authorizes the trial court to exercise its discretion in awarding property to the parties during a dissolution proceeding. We give the trial court broad discretion in making a property division, and will not reverse the trial court's decision on appeal absent a manifest abuse of discretion. *In re Marriage of Wright*, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). A manifest abuse of discretion is present if the court's discretion is exercised on untenable grounds. 179 Wn. App. at 261-62.

7

As an initial matter, we hold that although a trial court abuses its discretion by setting an interest rate below the statutory rate without setting forth adequate reasons for doing so, the court need not give reasons for imposing the statutory rate. *Harrington*, 85 Wn. App. at 631. ("The trial court must enter a judgment in compliance with RCW 4.56.110.") The statutory rate is the presumptive rate on all judgments except those specifically carved out by RCW 4.56.110.

It is well established that a fair and equitable division by a trial court "'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of the parties.'" *In re the Marriage of Urbana*, 147 Wn. App. 1, 11, 195 P.3d 959 (2008) (quoting *In re Marriage of Zahm*, 138 Wn.2d 213, 218-19, 978 P.2d 498 (1999)).

RCW 26.09.080 sets forth factors to be considered by the trial court in making its property distribution. These factors include, but are not limited to:

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage . . . ; and
> (4) The economic circumstances of each spouse . . . at the time the division of property is to become effective.

RCW 26.09.080. Although no single factor is dispositive, the economic circumstances of each spouse upon dissolution is of paramount concern. *Urbana*, 147 Wn. App. at 11. The trial court may consider other factors such as "'the health and ages of the parties, their prospects for future earnings, their education and employment histories, their necessities and financial abilities, their foreseeable future acquisitions and obligations, and whether the property to be divided should be attributed to the inheritance or efforts of one or both of the spouses.'" *Urbana*, 147 Wn. App. at 11 (quoting *In re Marriage of Olivares*, 69 Wn. App. 324, 329, 848 P.2d 1281 (1993)).

8

1. *Equal Property Division*

Lackey argues that the trial court intended an equal property division, and that the 12 percent interest rate unequally divided the property, awarding more to Pavlock. Because the trial court understood the effect of the 12 percent interest rate, this argument fails.

Lackey essentially argues that the trial court inadvertently skewed the property division in favor of Pavlock. But the record shows that the trial court understood the reality of a 12 percent interest rate when making its ruling, and nonetheless chose to impose it, giving specific reasons based on the record and concluding "it's fair and equitable to set the interest rate at 12 percent." VRP (Mar. 6, 2015) at 26. Contrary to Lackey's argument on appeal, the trial court did not abuse its discretion.

2. *Evidence Relied On*

Lackey also argues that the court relied on speculative and irrelevant matters in deciding to impose a 12 percent interest rate. Specifically he argues that the trial court should not have considered Lackey's interest rate within the general market, the likelihood that Lackey would default on the payments to Pavlock, or the potential appreciation of value of the chiropractic business. Given the broad discretion left to trial courts deciding these matters, we hold that considering these factors was not an abuse of discretion.

The facts considered by the trial court in determining the 12 percent interest rate were consistent with RCW 26.09.080. Lackey's ability to obtain a personal loan, the likelihood Lackey would default on the judgment, and the potential appreciation of the value of the chiropractic business and potential changes in interests rates are all related to either "[t]he nature

and extent of the community property" or "the economic circumstances of each spouse." RCW 26.09.080.

After hearing argument on Lackey's motion to reconsider and decrease the interest rate, the trial court determined that it was fair and equitable to set the interest rate at 12 percent because Pavlock needed the money and because the trial court was concerned that Lackey would default. We hold that the trial court acted within its discretion by considering Lackey's ability to obtain a personal loan within the general market, Lackey's likelihood of defaulting on the judgment, and the nature of the business.

In conclusion, we hold that the trial court did not abuse its discretion in applying the statutory judgment interest rate to the property-equalizing monetary judgment awarded to Pavlock against Lackey. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Maxa, J.