[No. 25806-1-I.   Division One.   December 16, 1991.]

*In the Matter of the Marriage of* JOYCE I. STEADMAN,
*Respondent, and* WINSTON A. STEADMAN,
*Appellant.*

---

524

*Rodney G. Pierce,* for appellant.

*John R. Praeger* and *Leatherman, Gehrke, Pozzi,* for respondent.

FORREST, J. — The husband, Winston A. Steadman (Winston), appeals the property division and the award of attorney fees to the wife, Joyce I. Steadman (Joyce). We affirm in part and reverse in part.

Winston and Joyce Steadman were married on June 15, 1985. In April or May 1986, Winston started a construction business known as Steadman Enterprises. Joyce worked in the office of Steadman Enterprises, managing the bookkeeper and accountant. Joyce is dyslexic and did not keep the books herself, although she understands the basics of bookkeeping. In regard to management of the business the trial court stated in finding of fact 6, in part:

[t]he husband managed the business and specifically made the decisions regarding the payment of employees and payment for material and made the decisions regarding the priority of payment of bills when there were insufficient funds.

Steadman Enterprises had a number of bookkeepers and apparently failed to pay its business taxes for approximately 1 year. The company was not profitable for long, if at all. The Steadmans borrowed money from Joyce's mother several times and in December 1987, Steadman Enterprises filed for bankruptcy.

In January 1989, Winston filed for dissolution and moved out of the house they rented from Joyce's mother. At that time, $3,200 in back real estate taxes and $1,471 in back mortgage payments, payments which Joyce and Winston had agreed to make, were owed on the house.

At the time Winston filed for dissolution Joyce started working for a start-up company called "Innovare". At the time of the decree Joyce was still working for Innovare but did not have an income. Her compensation was to be 5 percent of the stock once the company's product went on the market.

Pursuant to the dissolution decree Winston was awarded $10,000 worth of assets and Joyce was awarded $2,400 worth of assets. Joyce was ordered to assume $18,710 of the couple's financial obligations and Winston was ordered to assume the business tax liabilities, which totaled approximately $65,000. In assigning the tax obligations to Winston, the trial court stated:

I do not believe that she [Joyce] shared in information nor access to the control of the problem, even though I think she tried very hard. I think she fits, frankly, in the innocent spouse category under the Internal Revenue Service rules as to that obligation . . .

. . . .
. . . I order . . . that she should not be required to pay either the state obligations or the Internal Revenue obligations . . ..

Winston was also ordered to reimburse Joyce for $3,680 of the household expenses which had been incurred and to pay $5,412 for Joyce's attorney fees.

### PROPERTY DIVISION

■ Winston asserts that the trial court erred in making the property division because (1) the wife is not an innocent spouse within 26 U.S.C. § 6013(e), (2) the court failed to consider the husband's economic circumstances, and (3) the judgment is so one-sided that it is not just and equitable. Joyce does not attempt to defend the trial court's finding that she is an innocent spouse as defined by the federal statute and we agree with Winston that the decree cannot be sustained on the basis of that finding. However, if findings which are supported by the record justify the division, we may affirm.[1]

■ We find that the record supports the trial court's finding that Winston was the one who managed the business and made decisions regarding payment of debts, including taxes. The court explicitly relied on testimony of Mrs. Churchman, one of the bookkeepers, to that effect, as well as the undisputed fact that Winston has a long history of not paying taxes.[2] Winston's contention that the court failed to make a formal finding as to economic circumstances is without merit. There is no such obligation. The obligation is to consider the respective circumstances of the parties. The findings and the oral opinion of the court demonstrate that this was done.

Winston further argues that by relying on his role in generating the tax liabilities imposed on him, the court improperly considered his "marital misconduct".[3] A very similar argument was rejected in *In re Marriage of Clark*.[4]

---

[1] The judgment of the trial court will not be reversed if it can be sustained on any theory supported by the record and the law. *Sprague v. Sumitomo Forestry Co.*, 104 Wn.2d 751, 758, 709 P.2d 1200 (1985).

[2] At the time the parties were married Winston owed unpaid federal income tax for the years of 1978, 1982 and 1984.

[3] RCW 26.09.080 reads, in part: "the court shall, *without regard to marital misconduct*, make such disposition of the property and the liabilities of the parties". (Italics ours.)

[4] 13 Wn. App. 805, 538 P.2d 145, *review denied*, 86 Wn.2d 1001 (1975).

In *Clark*, the husband appealed the order which awarded the wife twice as much of the community assets. The husband argued that evidence of his drinking habit was erroneously admitted, and that the distribution was based on his marital misconduct rather than the economic condition of the parties. On appeal the court ruled that although the court could not consider "fault", the dissipation of the marital property was a factor relevant to the "attainment of a just and equitable distribution of marital property." *In re Marriage of Clark*, 13 Wn. App. 805, 808, 538 P.2d 145, *review denied*, 86 Wn.2d 1001 (1975). The court held that the trial court had properly considered the husband's drinking habit "for the purpose of determining whose labor or negatively productive conduct was responsible for creating or dissipating certain marital assets." *Clark*, at 809.

We agree with the *Clark* court's interpretation of "marital misconduct". The historical background supports the conclusion that the facts here do not involve "marital misconduct" as contemplated by the statute. Under the prior statute the court could consider the "merits of the parties" in apportioning property. Laws of 1949, ch. 215, § 11, p. 701.[5] Trial courts did so, considering cruelty or infidelity, for instance.[6] Indeed, the appellate courts had to limit abuse of this factor.[7] The "merits", as used in those cases, clearly refers to

---

[5]Before 1973 the law provided: "judgment shall be entered . . . making such disposition of the property of the parties, either community or separate, as shall appear just and equitable, *having regard to the respective merits of the parties* . . .." (Italics ours.) Laws of 1949, ch. 215, § 11, p. 701.

[6]*Bryant v. Bryant*, 68 Wn.2d 97, 411 P.2d 428 (1966) (involving cruelty and personal indignities); *Kosanke v. Kosanke*, 30 Wn.2d 523, 192 P.2d 337 (1948) (involving infidelity); *Myers v. Myers*, 21 Wn.2d 19, 149 P.2d 926 (1944) (involving infidelity); *Belmondo v. Belmondo*, 3 Wn. App. 958, 480 P.2d 786 (1970) (involving cruelty to the wife's son).

[7]The Supreme Court stated:
"The fact that one of the parties may have been in serious fault does not justify the imposition of a severe penalty in the way of deprivation of property. The matter of fault is a proper one for inquiry when making a division of property, but this of itself does not require that a larger portion of the property be awarded to the one not in fault than is given to the other." *Myers v. Myers*, 21 Wn.2d 19, 23, 149 P.2d 926 (1944).

immoral conduct within the marital relation. The Legislature wished to eliminate such considerations and did so by providing that the court may not consider "marital misconduct" in dividing property. Thus, marital misconduct refers to substantially the same conduct previously considered in evaluating the "merits" of the parties.

■ Based upon this history we find that the "marital misconduct" which a court may not consider under RCW 26.09.080 refers to immoral or physically abusive conduct[8] within the marital relationship and does not encompass gross fiscal improvidence, the squandering of marital assets or, as here, the deliberate and unnecessary incurring of tax liabilities. In shaping a fair and equitable apportionment of the parties' liabilities the trial court was entitled to consider whose "negatively productive conduct" resulted in the tax liabilities at issue. *Clark*, at 809.

In apportioning liabilities the trial court could properly consider all of the following: Winston's history of failing to pay taxes, his attitude toward taxes,[9] his 1988 income tax return showing a liability of $7,945 (indicating a substantial income but once again a failure to pay), and his lack of candor in regard to an additional bank account. These facts, taken in conjunction with the finding as to who was responsible for incurring the liability, justify allocating the tax liabilities to Winston.

■ In arguing that the property division is unjust, Winston overstates the inequality in the apportionment of liabilities. He ignores some $18,000 of obligations imposed on Joyce, despite the court's finding that she had no income.

---

[8]We note, however, that this is not to say that a court may not consider abuse by one spouse against another where that abuse has affected the economic circumstances of the abused spouse.

[9]At trial Mr. Steadman testified as follows:
"If you call owing taxes a problem, I expect to owe taxes, they're an ongoing thing through the business. And by not meeting these obligations and it would come in arrears, and you begin to receive demands from the state and Internal Revenue Service, then it becomes a problem. As long as you meet that obligation, which is ongoing, and you owe these taxes, I don't consider it a problem."

He also ignores the discrepancy between his 1988 income (which was sufficient to result in a $7,945 tax liability) and Joyce's lack of cash income. The inequality that did result from the trial court's apportioning of liabilities was not an abuse of discretion.

## ATTORNEY FEES

Winston asserts that the trial court erred in ordering him to pay Joyce's attorney fees pursuant to RCW 26.09.140[10] because the court did not consider his ability to pay or the debts placed on him. We agree.

■ An award of attorney fees under this provision is discretionary and should be reviewed for abuse of discretion.[11] However, in making a determination as to attorney fees the needs of the requesting party must be balanced against the other party's ability to pay.[12] Lack of findings as to either need or ability to pay requires reversal.[13]

There are no formal findings of fact as to either Joyce's need or Winston's ability to pay. However, this court may look to the trial court's oral opinion for informal findings.[14] The oral opinion demonstrates that the trial court

---

[10]RCW 26.09.140 reads, in part:

"The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

"Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs."

[11]*In re Marriage of Tower*, 55 Wn. App. 697, 704-05, 780 P.2d 863 (1989).

[12]*Kruger v. Kruger*, 37 Wn. App. 329, 333, 679 P.2d 961 (1984).

[13]*See In re Marriage of Mason*, 40 Wn. App. 450, 458, 698 P.2d 1104, *review denied*, 104 Wn.2d 1017 (1985), *appeal after remand*, 48 Wn. App. 688, 740 P.2d 356 (1987).

[14]*In re Marriage of Griffin*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990).

did properly consider Joyce's need.[15] There is, however, no such evaluation of Winston's ability to pay. The trial court erred in not evaluating Winston's ability to pay, particularly in view of the substantial tax liabilities imposed on him and the minimal assets awarded to him.

Reversal as to the award of attorney fees, affirmed as to the property division.

SCHOLFIELD and KENNEDY, JJ., concur.