

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 AUG 25 AM 9: 29

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Marriage of: ) No. 71152-1-I
)
JONATHAN ARRAS, ) DIVISION ONE
)
        Petitioner, )
)
and ) UNPUBLISHED
)
LAURA ARRAS (nka McCabe), ) FILED: August 25, 2014
)
        Respondent. )
)

Cox, J. – Laura McCabe challenges a parenting plan modification order. The trial court properly exercised its discretion when it modified the parenting plan. There is substantial evidence to support the trial court's findings. And the findings support the conclusions of law. We affirm.

Laura McCabe and Jonathan Arras were married in 2002. They have two children—a son born in 2003 and a daughter born in 2006. McCabe and Arras separated in 2009.

A dissolution proceeding followed. As part of that proceeding, the court entered a final parenting plan. The final parenting plan designated Arras as the primary parent, and provided McCabe parenting time every Tuesday after school until 7:30 p.m., every Thursday after school until Friday return to school, and alternating weekends from Friday after school until return to school on Monday. The parenting plan provided both parties with decision making authority.

In August 2012, Arras petitioned for modification of that parenting plan. McCabe never provided a response to the petition. Additionally, Arras moved for a temporary restraining order against McCabe, which the court granted.

The court found that there was adequate cause for hearing the modification petition. It entered an order appointing a guardian ad litem (GAL). It also continued the temporary restraining order previously entered with certain amendments. Specifically, the court ordered that McCabe must undergo a mental health evaluation, that McCabe was permitted supervised visitation twice a week, and that Arras had sole decision making authority.

Shortly before trial, McCabe moved to modify her response (there was none) to include a counter-claim. The court denied this motion.

Arras's petition for modification proceeded to trial. After four days of trial, fifteen witnesses, and other evidence the trial court issued its oral ruling, modifying the parenting plan. Thereafter, the court entered its written findings, conclusions, and order.

McCabe appeals.

## MODIFICATION OF PARENTING PLAN

McCabe challenges the trial court's modification of the parenting plan. Specifically, she challenges 21 "findings of fact," argues that "the findings do not support modification," and argues that the legal standard and elements for modification were not met. We disagree.

2

We review a trial court's decision to modify a parenting plan for abuse of discretion.[1] We will not reverse the decision unless the court's reasons are manifestly unreasonable or based on untenable grounds or reasons.[2] We uphold the trial court's findings of fact if supported by substantial evidence.[3] We look at the evidence and reasonable inferences therefrom in the light most favorable to the respondent.[4]

"Custodial changes are viewed as highly disruptive to children, and there is a strong presumption in favor of custodial continuity and against modification."[5] "Nonetheless, trial courts are given broad discretion in matters dealing with the welfare of children."[6]

Modification of a parenting plan is statutorily prescribed by RCW 26.09.260.[7] Compliance with the statute is mandatory.[8]

---

[1] In re Marriage of Zigler and Sidwell, 154 Wn. App. 803, 808, 226 P.3d 202 (2010).

[2] See id. at 808-09.

[3] In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

[4] Zigler, 154 Wn. App. at 812.

[5] McDole, 122 Wn.2d at 610.

[6] Id.

[7] In re Marriage of Tomsovic, 118 Wn. App. 96, 103, 74 P.3d 692 (2003).

[8] Id.

*RCW 26.09.260(1) and (2)*

In this case, the trial court found that the parenting plan should be modified pursuant to RCW 26.09.260(1) and (2). This statute provides in pertinent part:

> (1) Except as otherwise provided in subsection (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.
>
> (2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:
>
> . . .
>
> (c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child;[9]

The court's written Finding 2.2 reflects the necessary statutory elements to support modification and adjustment under these subsections. It states:

> The Parenting Plan should be modified because a substantial change of circumstances has occurred in the circumstances of the children or the non-moving party (Respondent) and the modification is in the best interest of the children and is necessary to serve the children's best interests. The children's environment under the current Parenting Plan is detrimental to their physical, mental, or emotional health, and the harm likely to be caused by a change in environment is outweighed by the advantage of a change to the children.[10]

---

[9] RCW 26.09.260.

[10] Clerk's Papers at 188-89.

4

The trial court then set out several paragraphs of facts to support the requested modification.[11] It noted that these facts "arose since the prior plan or were unknown to the court at the time of the prior plan."[12]

In one finding, the court discussed a substantial change in circumstances—McCabe's move to West Seattle:

> [McCabe] has moved to West Seattle, creating a much longer drive to transport the children to each parent's home and to school in Bellevue. The children's attendance at school has been significantly affected on days [McCabe] was supposed to bring them to school, with evidence at trial showing that the children had many school tardies on days [McCabe] was to do the transportation to school. This affected their performance at school as well. [Arras] is also better able to maintain a more predictable and appropriate schedule for the children than [McCabe]. [McCabe] is self employed and not keeping traditional work and sleep hours. Her partner is in the entertainment business, and testimony from her and others showed that it is very important to her to accommodate his schedule, including late hours. This has affected the children. These are young children who have had behavioral problems who need consistency. When they have stayed over at [McCabe's] house on school nights, the late schedule and greater distance between homes/school has negatively impacted their school attendance and performance.[13]

This finding is supported by substantial evidence.

For example, the son's report card shows four absences and eight tardies during his third grade year. Arras testified that the children had unexcused tardies 20 percent of the time McCabe brought them to school. McCabe testified that the tardies were the result of the bridge not running on schedule. She

---

[11] Id. at 189-90.

[12] Id. at 189.

[13] Id.

testified that it was not an issue when she lived in the Central District, and it had not been an issue since she moved again. She conceded that the children are not tardy when they stay with Arras because they take the school bus.

Additionally, the GAL testified that McCabe insisted on supervised visitation not starting until 11 a.m. McCabe testified that her boyfriend is a musician and an earlier time would not work because he works late. She also testified that at times she sleeps beyond 11 a.m.

Further, Arras testified that the children were up past their bed time when they stayed overnight at McCabe's. He also testified that he volunteered in the children's classrooms, and after an overnight at McCabe's, the children were "completely exhausted," "unable to focus," and that their schooling started to suffer. For example, he testified that their grades were down and that the daughter was struggling with reading.

Several witnesses testified about the children's improvement in school after the new temporary parenting plan was implemented.

McCabe argues that the record does not support a finding that the children had many tardies, that no evidence attributed fluctuation in the son's report cards to McCabe's conduct, that the record is silent as to whether her live-in partner's musician lifestyle affected the children, and that there is no evidence that the children's eating or sleeping schedule was not perfectly regular. But the evidence just discussed supports this finding. Further, Arras's mother testified that the son told her that sometimes he and his sister have to "make cereal" for themselves because McCabe is still asleep.

In another finding, the court discussed another substantial change in circumstances—the parties' inability to get along and the son's worsening behavior:

> The parents have been completely unable to get along to provide appropriate joint decision making. The parties' son [ ] was suffering from such extreme mental health and behavioral issues that by 2011-2012 he was a safety risk to himself and others, requiring a school safety plan, school suspensions, and school bus suspensions. Timely and necessary treatment was needed, but the evidence was overwhelming that the failure to get [the son] treatment for over 18 months was due to [McCabe] instigating conflicts and putting up roadblocks to getting [the son] the care he needed. [McCabe] repeatedly came up with excuses and delays to sabotage attempts to get treatment for both children. Neutral witnesses, including [McCabe's] own father, testified in this regard. The evidence at trial was also clear that [Arras] was much more receptive than [McCabe] to input from professionals regarding parenting strategies and counseling for the children, and that [McCabe] didn't engage in or follow through with the professionals. [McCabe's] testimony regarding these issues was not credible. In sum, the evidence on these issues was clear and compelling to the point that if this had been a criminal case the Court would have found beyond a reasonable doubt.[14]

This finding is also supported by substantial evidence in the record.

For example, as the court points out, McCabe's father testified that they had concerns about McCabe's son, wanted to get him into counseling, and that McCabe was resistant and would cancel appointments. He also testified that the son was expelled from the school bus and hit other children. McCabe's step-mother testified that the son began to mirror McCabe's anger, and it took nine months to get the son into therapy because McCabe would not agree. Arras's mother testified that she saw "roadblock after roadblock after roadblock" with

---

14 Clerk's Papers at 190.

respect to setting up counseling. She said that the son's behavior worsened between 2010 and 2012, that he began "screaming and cussing," and that his behavior became more like McCabe.

Additionally, the GAL's reports and testimony reflected similar concerns about the son's escalating behavior. Her initial report stated that the parties could not agree on decisions, that the son had behavioral issues, and that he "suffered needlessly" because he needed counseling. Her testimony revealed incidents where the son had harmed himself and threatened to harm others. The GAL's final report stated that McCabe seems to have instigated confusion and conflict and that the children will be harmed by the parents' inability to make decisions.

McCabe argues that there is no evidence that [the son] suffered from "extreme mental health issues," or has ever been "a safety risk to himself and others," or that [the son] ever required a "school safety plan." But Arras and the GAL provided evidence of this in their testimony. For example, Arras testified that the son had multiple suspensions "both on the bus and at school for being physically aggressive" and "had a safety behavior plan issued by the school." Moreover, McCabe does not challenge the other facts within this finding, such as the fact that the son needed treatment and that she blocked this treatment. These facts also show a change of circumstances that was detrimental.

In a third finding, the court found that "[w]hile there were allegations of anger and yelling by both parents, the evidence at trial was clear that [McCabe's] improper parenting in this regard was far in excess of [Arras's]." It also found

that McCabe inappropriately manages relationships and issues. Despite McCabe's arguments to the contrary, this finding is supported by substantial evidence.

For example, a family therapist testified that both the son and daughter reported that McCabe had slapped the son in the face and that she hits him and grabs his hair "really hard." Arras's mother testified that the son told her that McCabe spit a whole mouthful of food at him. Arras testified that his son told him that McCabe slapped a plate of food out of his hands, and it shattered at his feet and sprayed food all over him.

In another finding, the court found that "[s]ince being in counseling and under the temporary parenting schedule[e] . . . (a schedule wherein [McCabe] has had much less time with the children than is provided for in the parties' 2010 parenting plan), the children's behavior has substantially improved, as has their attendance at school and their grades." The court found that this was especially true for the son, whose improvement was "extraordinary." This finding is not challenged on appeal and, moreover, is supported by substantial evidence in the record.

Finally, the court expressly found Arras to be more credible than McCabe.

In sum, there is substantial evidence to support the court's finding that a substantial change of circumstances has occurred in the circumstances of the children or the non-moving party, that the modification is in the best interest of the children and is necessary to serve the children's best interests, and that the children's environment under the current parenting plan is detrimental to their

physical, mental, or emotional health. The trial court did not abuse its discretion when it determined that the parenting plan should be modified.

*RCW 26.09.260(10)*

The court also found that the nonresidential aspects of the parenting plan should be adjusted in the areas of dispute resolution and decision making, pursuant to RCW 26.09.260(10). This subsection also requires a showing of a "substantial change of circumstances of either parent or of a child, and the adjustment is in the best interest of the child."[15] To support adjustment of the parenting plan under this provision, the court relied on the same findings previously discussed. For the same reasons, we conclude that the court did not abuse its discretion when it determined that the parenting plan should be adjusted.

McCabe alleges a number of errors. None are persuasive.

First, McCabe argues that the record does not show the essential elements for a modification. She contends the record does not show a substantial change of circumstances and argues that the court claimed discretion to modify "on the basis of a 6.9 mile move" from the Central District to West Seattle. But this overlooks the other substantial changes that the court identified, such as the parties' inability to get along and the son's worsening behavioral problems.

McCabe also contends that these changes did not arise subsequent to the existing parenting plan as required by statute, because her move to West Seattle

---

[15] RCW 26.09.260(10).

could have been anticipated, and Arras's allegations of abuse were based on incidents prior to dissolution. But nothing in the record or parenting plan supports her assertion that the move to West Seattle and the subsequent resulting problems could have been anticipated. Additionally, the trial court did not rely on the abuse allegations to support modification. In fact, it expressly rejected that as a basis for modification.[16] Thus, these arguments are not persuasive.

Second, McCabe argues that an "unremarkable number of tardies" does not show that the child's present environment is detrimental as required by RCW 26.09.260(2)(c). She argues that the court limited her rights "on the sole ground that it takes 15-20 minutes longer to reach the children's school." But this misrepresents the court's findings and fails to acknowledge the other findings that showed that the children's present environment was detrimental.

Third, McCabe argues that the written findings do not correspond to the court's announced findings and "are less authoritative than the bench findings." This claim is contrary to the record. In any event, the court's written findings, conclusions, and order reflect the final ruling of the court. The contention that these are less authoritative is simply untrue.

Fourth, McCabe argues that the court abused its discretion by "disregarding the GAL's recommendation." But McCabe fails to show that the

---

[16] See Clerk's Papers at 190 ("While evidence at trial raised concerns about [McCabe's] parenting, specifically as it related to hygiene, clothing, sleeping and eating schedules, much of this may have been due to [McCabe's] mental health issues that were being untreated or erratically managed, which at this time appear to be adequately treated and managed. There was no evidence of drug use. The evidence does not support imposition of RCW 26.09.191 restrictions against [McCabe] at this time.").

court disregarded the GAL's recommendation. While the GAL's final report recommended that the previous parenting plan be reinstated, the GAL later clarified this recommendation at trial. At trial, the GAL testified that her recommendation was based on the fact that she expected the court to have a review in six months and that a GAL would "stay on board."

Further, even if the court disregarded the GAL's recommendation in the final report, a court is "free to ignore the guardian ad litem's recommendations if they are not supported by other evidence or [if] it finds other testimony more convincing."[17] A court's decision to disregard a GAL report is reviewed for abuse of discretion.[18] As previously discussed, there was substantial evidence that the parties' inability to get along has been harmful to the children, especially the son, and that the mother's move to West Seattle and home environment was detrimental to the children. This evidence provided tenable grounds to disregard the recommendation in the final report.

Fifth, McCabe argues that the court "erroneously deemed courtroom demeanor as evidence of parental fitness." She is mistaken.

In one instance, the trial court cited to McCabe's demeanor when it evaluated her credibility. But "[i]t is the trial court's job to weigh all the evidence and to determine credibility of the witnesses when there is disputed evidence."[19]

---

[17] Fernando v. Nieswandt, 87 Wn. App. 103, 107, 940 P.2d 1380 (1997).

[18] See id. at 107-08.

[19] See In re Estate of Bussler, 160 Wn. App. 449, 469, 247 P.3d 821 (2011).

A witness's demeanor is one factor to consider when assessing credibility.[20] Thus, the court's observation was proper.

In another instance, the trial court said McCabe's demeanor "demonstrated that [McCabe] needs to get her own way." McCabe does not appear to challenge this reference to her demeanor. But even if the court improperly considered her demeanor as evidence, it would constitute reversible error only if the appellant shows that the trial outcome was materially affected by the error.[21] In support of this point, the trial court also cited testimony by other witnesses. Given McCabe's lack of argument and the cumulative evidence to support this point, she fails to show that the outcome was materially affected.

Sixth, McCabe argues that the court's hearsay rulings "do not conform to the rules of evidence." She briefly recites general principles of law about hearsay and expert opinion and cites to 17 different pages in the record, claiming that "the court allowed [Arras's] witness to testify to inadmissible hearsay and inadmissible opinion testimony based on the inadmissible hearsay." This shotgun approach to argument is insufficient to warrant further review.[22]

---

[20] State v. Barry, 179 Wn. App. 175, 179, 317 P.3d 528, review granted, 328 P.3d 903 (2014); In re Sego, 82 Wn.2d 736, 740, 513 P.2d 831 (1973).

[21] See Barry, 179 Wn. App. at 181-82.

[22] See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)).

## CR 15 MOTION

McCabe argues that that the court erroneously denied her motion to amend her response. We hold that the court properly exercised its discretion.

"The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party."[23] Factors to consider in determining prejudice include undue delay, unfair surprise, and jury confusion.[24] We review the denial of a motion to amend for abuse of discretion.[25]

Here, the trial court stated in its order:

On July 3, 2013 [McCabe] filed a "Motion to Amend Response to Include Counterclaim", a counterclaim that requested that the parties' Parenting Plan be modified to make her the primary parent. The motion was procedurally inappropriate in that the Respondent had not actually filed a Response prior to that date, and the motion was filed only two court days before trial, well after the August 27, 2012 Adequate Cause Hearing, the November 26, 2012 Confirmation of Issues, the December 21, 2012 Status Conference, the June 3, 2013 discovery cutoff, and the May 21, 2013 Pretrial Conference.[26]

We adopt the reasoning of the trial court. Denial of this motion was proper.

## ATTORNEY FEES

McCabe argues that the court abused its discretion in denying her attorney fees. She also seeks an award of reasonable costs and fees for this

---

[23] Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999).

[24] Id. at 505-06.

[25] Prosser Hill Coalition v. County of Spokane, 176 Wn. App. 280, 286, 309 P.3d 1202 (2013).

[26] Clerk's Papers at 191.

appeal. Arras also asks for fees and costs on appeal. We conclude that the court did not abuse its discretion, and we deny fees to both parties on appeal.

RCW 26.09.140 provides, in part:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

*Fees at Trial*

An award of attorney fees under RCW 26.09.140 is discretionary and is reviewed for abuse of discretion.[27] In making a determination as to attorney fees, the needs of the requesting party must be balanced against the other party's ability to pay.[28]

Here, as Arras points out, McCabe failed to provide any of the required financial documentation to support a request for fees, as required by King County Local Family Law Rule 10.[29] McCabe does not dispute this in her reply brief. We find nothing in the record to show that she provided the required documentation. Accordingly, we conclude that the court did not abuse its discretion when it ordered both parties to pay their own attorney fees and costs.

---

[27] In re Marriage of Steadman, 63 Wn. App. 523, 529, 821 P.2d 59 (1991).

[28] Id. at 529.

[29] See King County Local Family Law Rule 10.

*Fees on Appeal*

Both parties ask for fees on appeal pursuant to the same statute identified previously. We decline to award fees to either party.

RAP 18.1 authorizes attorney fees on appeal if provided by applicable law. RCW 26.09.140 provides that after considering the financial resources of both parties, we have discretion to award attorney fees. But to receive attorney fees under this statute, the requesting party must show need and the other's ability to pay fees.[30] A party relying on a financial need theory for recovery of attorney fees must submit an affidavit of need "no later than 10 days prior to the date the case is set for oral argument or consideration on the merits."[31]

Because neither party has submitted such an affidavit, we deny both requests for fees on appeal.

McCabe also asks for fees on an equitable ground, alleging that Arras's attorney "conceded that he had extended the trial an entire day" by presenting witnesses with duplicative testimony. But this does not accurately reflect the record. While Arras's attorney commented that the trial went longer than expected, he did not make this concession. This argument is not persuasive.

*Costs*

Costs are awarded to the prevailing party in an appeal. Arras prevails in this appeal. Thus, he is entitled to the award of costs, subject to compliance with RAP 14.1 et. seq.

---

[30] In re Marriage of Konzen, 103 Wn.2d 470, 478, 693 P.2d 97 (1985).

[31] RAP 18.1(c).

## MOTION TO MODIFY COMMISSIONER'S RULING

Following the filing of her notice of appeal, McCabe moved to stay the order granting modification of the parenting plan, pending review of her appeal. Arras opposed her motion. A commissioner of this court denied McCabe's motion.

Subsequently, McCabe moved to modify the commissioner's ruling, asking this court to exercise its discretion to "restore the status quo" under the May 6, 2010 parenting plan "while the modification proceedings are reviewed." Because the modification proceedings have now been affirmed, this motion to modify the commissioner's ruling is moot.

We affirm the modification order.

_____
Cox, J.

WE CONCUR:

_____          _____
Leach, J.                         Becker, J.