IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 32074-0-III |
| | ) | |
| BARBARA J. DANNENBRING, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| SCOTT D. DANNENBRING, | ) | |
| | ) | |
| Respondent. | ) | |

BROWN, J. – Barbara Dannenbring appeals the superior court's order modifying upwardly her maintenance award against Scott Dannenbring. She contends the court erred in not granting more maintenance, failing to grant lifetime maintenance and attorney fees, and barring her from bringing future modification petitions. Mr. Dannenbring cross appeals. He contends the court erred in its substantial change of circumstance ruling and in increasing maintenance. He correctly concedes Ms. Dannenbring should be able to bring further modification petitions. Finding no legal error or abuse of discretion on the remaining contentions, we affirm and remand for the superior court to strike the language barring future maintenance modification petitions.

FACTS

In January 2011, the court dissolved the Dannenbring's 29-year marriage. The court awarded about 50 percent of the community property to each party, assigned most community debt to Mr. Dannenbring, and ordered a $96,035 cash equalization payment to Ms. Dannenbring. The court ordered maintenance for Ms. Dannenbring payable $3,500 per month for the first 30 months, through April 2013, then $1,000 per month for the next 30 months, through November 2015. The court considered Mr. Dannenbring's earnings and earning capacity and the RCW 26.09.090 maintenance factors including Ms. Dannenbring's age, her financial resources, the time needed for her to finish getting her master's degree and find teaching employment, the duration of marriage, and her physical condition. The court decided the first amount was just as it allowed Ms. Dannenbring to finish her master's degree and the next lower amount would assist her in her transition from displaced homemaker to working professional.

On May 16, 2013, Ms. Dannenbring petitioned to modify the maintenance award to continue the $3,500 payments for an additional two years and to reserve her right to request lifetime maintenance. She explained her unsuccessful efforts to find full-time employment despite having earned her master's degree about a year earlier. Mr. Dannenbring objected, arguing Ms. Dannenbring had neither used best efforts to find employment nor shown a substantial change in circumstances.

The court found while Ms. Dannenbring had increased her salary, this amount was "not as much as [the court] had anticipated that she would be able to increase it."

2

Clerk's Papers (CP) at 172. The court recognized Mr. Dannenbring had worked hard to increase his monthly earnings by $2,000 to $3,000 in the wake of the dissolution. The court increased Ms. Dannenbring's maintenance for the remaining 29 months from $1,000 to $2,500 per month but did not reserve the lifetime maintenance issue and denied both parties' request for attorney fees.

### ANALYSIS

### A. Modification

The issue is whether the trial court erred in modifying Ms. Dannenbring's maintenance by increasing it from $1,000 to $2,500 per month. She contends the court abused its discretion in not increasing her maintenance to $3,500 per month. She argues her failure to find full-time employment and Mr. Dannenbring's increased income justified a higher modification amount. In Mr. Dannenbring's cross appeal, he contends the court abused its discretion in increasing Ms. Dannenbring's maintenance, mainly because she failed to show a substantial change in circumstances. He argues Ms. Dannenbring's circumstances were not unforeseen, her failure to find employment was not in good faith, and his current income is not relevant.

We review modification orders for substantial supporting evidence and for legal error. *Spreen v. Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001). "Substantial evidence supports a factual determination if the record contains sufficient evidence to persuade a fair-minded, rational person of the truth of that determination." *Id.*

3

Maintenance awards can only be modified upon a showing of a substantial change in circumstances not within the parties' contemplation at the time of the dissolution decree. *Id.* at 347; *see also* RCW 26.09.170(1). "The phrase 'change in circumstances' refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." *In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292 (1987). Regarding the financial ability of the obligor spouse, "a former wife may not obtain additional alimony on the theory that such is in keeping with her former husband's present station in life." *Gordon v. Gordon*, 44 Wn.2d 222, 228, 266 P.2d 786 (1954). We review a trial court's change in circumstances determination in a maintenance modification for an abuse of discretion. *Ochsner*, 47 Wn. App. at 524-25. A trial court abuses its discretion when its decision is entered on manifestly unreasonable grounds or for untenable reasons. *Id.* at 525.

In *Bowman v. Bowman*, 77 Wn.2d 174, 459 P.2d 787 (1969), the court upheld a substantial change in circumstances determination. The trial court believed the wife would eventually become self-supporting and awarded her maintenance for two years. *Id.* at 175. During these two years, the wife received the equivalent of a high school diploma and enrolled in vocational school. *Id.* However, the wife was not in good health and was limited to part-time work. *Id.* Before the two-year period ended, the wife petitioned to modify her maintenance. *Id.* The trial court granted the wife's petition, finding "the anticipated situation of [the wife] being fully self-supporting had not materialized, through no substantial fault of [the wife]." *Id.* The *Bowman* court upheld

4

the modification because "[t]he primary purpose of the payment of support . . . for a period of 2 years was to enable [the wife] to become self-supporting by the end of that period through additional training and work experience." *Id.* at 176.

Once a court finds modification is needed, the nonexclusive list of factors seen in RCW 26.09.090 must be considered in determining the amount of maintenance. These factors include the financial resources of the spouse seeking maintenance, the standard of living established during the marriage, the length of the marriage, the physical condition of the spouse seeking maintenance, the time needed for the spouse seeking maintenance to find employment, and the ability of the spouse from whom maintenance is sought to meet the needs of both spouses. RCW 26.09.090. "[T]he only limitation placed upon the trial court's ability to award maintenance is that the amount and duration, considering all relevant factors, be just." *In re Marriage of Washburn*, 101 Wn.2d 168, 178, 677 P.2d 152 (1984); *see also* RCW 26.09.090. Calculation of what is reasonable in terms of amount and length of time before maintenance terminates depends on the facts and circumstances of each particular case. *See Spreen*, 107 Wn. App. at 348. But a maintenance award "that does not evidence a fair consideration of the statutory factors results from an abuse of discretion." *Id.* at 349-50.

Substantial evidence supports the trial court concluding Ms. Dannenbring's circumstances have changed sufficiently to warrant modification of her maintenance. At the time of the dissolution, the court found Ms. Dannenbring could be self-supporting because she had skills and education which could be brought up-to-date. The court

5

approved of Ms. Dannenbring's choice to return to school to get her master's degree in English as a second language, an area with available jobs. By creating a two-tiered maintenance award, the court fashioned the award in such a way so as to allow Ms. Dannenbring to "continue in the direction she is going" so she could "re-enter the job market in fairly short order." CP at 46. The $1,000 payments were designed to assist Ms. Dannenbring with her transition. A lower amount was awarded because it was the court's "belief and hope that [Ms. Dannenbring would be] working at that point." CP at 29. Thus, Ms. Dannenbring's unemployment when the $1,000 monthly payments began was not contemplated by the trial court.

Moreover, evidence supports the trial court's determining Ms. Dannenbring was not acting in bad faith. She graduated from her master's program early and has applied to numerous jobs in the Seattle area. She sought work in an area where she had made contacts through networking while at school. The trial court reasoned this situation is analogous to that seen in *Bowman*: through no appreciable fault of Ms. Dannenbring, the court's expectation she would be employed and well on her way to being self-supporting did not come into fruition.

While Mr. Dannenbring is correct in noting his increased income could not constitute the sole basis for increasing maintenance, because Ms. Dannenbring demonstrated her need for increased maintenance, his income is a factor in determining his ability to pay. *See Gordon*, 44 Wn.2d at 227 (noting where wife made no showing she could not find employment to augment her income, husband's increase in earning

power, while pertinent to the question of financial ability to pay increased maintenance, had nothing to do with wife's need). In increasing maintenance to $2,500 per month, the trial court looked to several statutory factors including Ms. Dannenbring's financial resources, Mr. Dannenbring's ability to pay, and the time needed for Ms. Dannenbring to find employment.

Ms. Dannenbring's contention the court relied on a non-statutory factor–what Ms. Dannenbring "deserved"–in setting the amount at $2,500 instead of $3,500 is not supported in the record. This is not like what was seen in *Spreen*, where the trial court explicitly stated the wife was only "entitled to" maintenance for a set number of years. *Spreen*, 107 Wn. App. at 348. Rather, Ms. Dannenbring's circumstances are different now than they were at dissolution. Ms. Dannenbring has completed her education. She has increased her salary. She has other resources available to her, including the cash equalization payment from Mr. Dannenbring for the family home and over $200,000 on deposit in banks. The court was mindful of both parties' incomes in setting the amount.

Given all, we conclude the trial court did not abuse its discretion in modifying its maintenance award. Substantial evidence supports the court's finding of an uncontemplated substantial change in circumstances. The court fairly considered the RCW 26.09.090 factors in determining the amount of the modified maintenance. We now turn to whether the trial court erred in failing to reserve lifetime maintenance issue. Ms. Dannenbring argues a good chance exists she will not become self-supporting given her age and lack of work history.

7

"The purpose of spousal maintenance is to support a spouse . . . until she is able to earn her own living or otherwise become self-supporting." *In re Marriage of Irwin*, 64 Wn. App. 38, 55, 822 P.2d 797 (1992). Thus, an award of maintenance is not a matter of right. *Id.* Even where maintenance is awarded, "one spouse should not be given a perpetual lien on the other spouse's future income." *In re Marriage of Sheffer*, 60 Wn. App. 51, 54, 802 P.2d 817 (1990). In light of this, lifetime maintenance awards are generally disfavored. *In re Marriage of Coyle*, 61 Wn. App. 653, 657, 811 P.2d 244 (1991). *But see In re Marriage of Morrow*, 53 Wn. App. 579, 584, 587-88, 770 P.2d 197 (1989) (upholding lifetime maintenance where wife had limited ability to earn what husband earned because of health problems and husband had converted community property for his own use); *In re Marriage of Matthews*, 70 Wn. App. 116, 124, 853 P.2d 462 (1993) (upholding lifetime maintenance "when it is clear the party seeking maintenance will not be able to contribute significantly to . . . her own livelihood").

The trial court continued to reason Ms. Dannenbring can work and support herself independently in the modification proceeding. While Ms. Dannenbring is in her mid-50s and has limited work experience, she now has a master's degree in English as a second language. She was awarded 50 percent of the community assets in the dissolution and virtually no liabilities. The court modified her maintenance to suit Ms. Dannenbring's current needs while giving her additional time to become self-supporting. If Ms. Dannenbring finds she still needs maintenance after the fixed term ends, she can petition for further modification. *See Ovens v. Ovens*, 61 Wn.2d 6, 9, 376 P.2d 839

8

(1962) (stating continuance of maintenance can be reviewed at the end of the fixed period if there is a showing of need and "the evidentiary expectation upon which the trial judge premised his finding on has not, in fact, materialized"). Given all, we conclude the trial court did not err in failing to reserve the issue of lifetime maintenance.

## B. Attorney Fees

Ms. Dannenbring contends the court erred in failing to award her attorney fees below. She argues the court improperly failed to consider her need and Mr. Dannenbring's ability to pay.

The decision to award attorney fees in a dissolution action is a matter of trial court discretion. *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). The party challenging the decision to deny attorney fees must establish "the court used its discretion in an untenable or manifestly unreasonable manner." *Id.* Under RCW 26.09.140, a court can award attorney fees in connection with a modification proceeding. But before doing so, RCW 26.09.140 requires the trial court to "'balance the needs of the spouse requesting them with the ability of the other spouse to pay.'" *Mansour v. Mansour*, 126 Wn. App. 1, 16-17, 106 P.3d 768 (2004) (quoting *In re Marriage of Stenshoel*, 72 Wn. App. 800, 812, 866 P.2d 635 1993)). Lack of findings as to either a party's need or ability to pay requires reversal. *In re Marriage of Steadman*, 63 Wn. App. 523, 529, 821 P.2d 59 (1991). Without formal findings as to the parties' financial resources, an appellate court may look to the trial court's oral opinion for informal findings. *Id.*

9

While the trial court made no specific formal findings as to Ms. Dannenbring's financial need or Mr. Dannenbring's ability to pay, the court did make its ruling while being "mindful of both partie[s'] respective incomes." CP at 177. Furthermore, the oral opinion shows the court properly considered both Ms. Dannenbring's financial need and Mr. Dannenbring's ability to pay. By stating, "I believe, as I read the materials, she has increased it some over [the $12,000 per year determined at the dissolution proceeding], but not as much as I had anticipated that she would be able to increase it," the court demonstrated its consideration of Ms. Dannenbring's financial need. CP at 172. The court evinced contemplation of Mr. Dannenbring's ability to pay when it stated he "proved to be every bit as energetic and successful in the job market as he had been" prior to the dissolution. CP at 173. Thus, the trial court balanced the parties' financial situations and did not abuse its discretion in denying Ms. Dannenbring's request for attorney fees.

Both parties request attorney fees under RCW 26.09.140 for this appeal. This provision gives the court discretion to award attorney fees to either party based on the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay. *In re Marriage of Pennamen*, 135 Wn. App. 790, 807-08, 146 P.3d 466 (2006). In light of Ms. Dannenbring's increased maintenance, increased income, other resources available to her, and the allocation of community debt, she has the ability to pay her attorney fees for this appeal. Similarly, given Mr. Dannenbring's

No. 32074-0-III
*In re Marriage of Dannenbring*

increase in monthly income, he also has the ability to pay his attorney fees for this appeal. Accordingly, we decline to award fees to either party.

Affirmed and remanded for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.

11