**FILED**
**APRIL 4, 2024**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 39431-0-III |
| | ) | |
| ELVIRA GARIBAY, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| CHRISTIAN TIMOTHY ZEGERS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Christian Zegers appeals the trial court's property award in this divorce action. We mostly affirm, but remand for the trial court to apportion the consumer debt in a just and equitable manner.

FACTS

In 2020, Elvira Garibay petitioned the trial court to dissolve her marriage to Christian Zegers. The couple had married in 2005 and separated for the final time in 2019. Before trial, the couple mutually agreed to a parenting plan for their two minor children.

Over the course of their marriage, Mr. Zegers had risen steadily in the consumer loan origination and mortgage origination industries. For most of the marriage, he had earned between $40,000 and $70,000 per year. However, in 2020, Mr. Zegers' income spiked to $147,685. Mr. Zegers attributed his increased earnings, in part, to depressed interest rates resulting from the pandemic. When interest rates climbed near the end of the pandemic, Mr. Zegers elected to return to the consumer lending industry. Ms. Garibay over the course of the parties' marriage had primarily worked as a stay-at-home mother.

When asked at trial why she wished to dissolve her marriage, Ms. Garibay stated that "the big [reason] was debt." Rep. of Proc. (RP) at 119. In 2017, after returning from a mission trip to Guatemala, Ms. Garibay learned that Mr. Zegers had opened a new line of credit and charged nearly $3,000 to it in one week. Subsequently, Mr. Zegers disclosed additional consumer debt to Ms. Garibay and eventually informed her that their family was "living off of credit cards." RP at 128.

The couple separated in 2017, but then reconciled and attempted to reduce or consolidate their debt. To this end, the parties both liquidated Mr. Zegers' retirement account and took out a home equity line of credit (HELOC). With what remained of the HELOC after satisfying debts, the parties undertook an extensive home renovation.

2

However, the community by 2019 had once more accrued considerable consumer debt. The parties separated and Ms. Garibay filed for divorce.

*Trial*

This matter came to trial in October 2022. We organize the parties' testimony at trial around three issues raised in this appeal.

### i. *Ms. Garibay's knowledge of debt*

Ms. Garibay testified that she was unaware of the family's consumer debt, as most of the credit accounts in question were in Mr. Zegers' name and as Mr. Zegers managed the family's finances. Ms. Garibay claimed not to have seen the couple's credit card statements. She also claimed not to have seen any statements during the pretrial phase, though eventually she admitted the statements in question may have been obtained through discovery and e-mailed to her.

Mr. Zegers conceded that many of the credit card statements came to his e-mail only. However, he testified that Ms. Garibay had access to their joint statements via an online portal.

### ii. *Nature of consumer debt*

Without disputing the extent of the community's debt, Mr. Zegers sought to characterize that debt as benefiting the community rather than benefiting only himself. To that end, Mr. Zegers presented Ms. Garibay with account statements and asked her to

identify any purchases that did not benefit the community. Ms. Garibay was unable to do so. At one point, Ms. Garibay insisted a certain debt was Mr. Zegers' own simply because "he had the opportunity to pay the balance off and, instead, accrued other credit card debt." RP at 156.

Later in her testimony, Ms. Garibay stated that another credit card balance was separate debt because Mr. Zegers had produced no statements to the contrary. On cross-examination, Ms. Garibay testified, in her view, such a debt was separate—owing to withheld statements—even if the balance in question had resulted from community expenses:

> Q.    And you're not disputing the fact that [these expenses] may have went to the benefit of the community; you're just saying you didn't know about [them]; therefore, some of [the debt] might be separate?
> A.    So I don't—for me, there was no reason to hide, and for me, it was an integrity thing. So when I would ask for statements, I wouldn't get them.
> Q.    So, again, to understand your reasoning . . . when you're saying these things are separate, your rationale is the fact that you did not know they were happening; therefore, they are separate debts?
> A.    Because of the history of lack of integrity.

RP at 165-66.

### iii.  Home valuation

In May 2021, Ms. Garibay responded to discovery questions by answering, in part, that the value of their home was "[a]pproximately $180,000 in 2017—flooring and

electrical are unfinished."  Clerk's Papers (CP) at 17.  The parties obtained an appraisal of their home that valued the property at $292,000 as of June 15, 2021.  One day prior to trial, Ms. Garibay informed Mr. Zegers that she would propose a $277,000 valuation in lieu of that figure.[1]  Mr. Zegers brought a motion to exclude Ms. Garibay's proposal, which the trial court denied.

Ultimately, the court did value the home at $277,000.  However, the court based this valuation on a downturn in property values since the date of appraisal and not on Ms. Garibay's testimony.  The court also noted that Mr. Zegers before trial had secured an additional appraisal of the home, which he admitted had produced a valuation of less than $292,000.

*Dissolution order*

The trial court dissolved Ms. Garibay's and Mr. Zegers' marriage and divided their marital property.  Although Mr. Zegers had offered to accept the entirety of the community's consumer debt in exchange for an offsetting share of the parties' equity in their home, the court instead awarded Mr. Zegers all the consumer debt without any offsetting equity.  Supporting this order was the court's finding that Mr. Zegers was

---

[1] At trial, Ms. Garibay also claimed that the parties' home was worth only $230,000.  However, this appears to have been either confusion or extemporaneous speculation on Ms. Garibay's part.  The valuation she requested in the joint trial management report was $277,000.

individually responsible for the community's reckless spending. Specifically, the court

stated:

> There was credible testimony at trial that a lot of marital discord involved [Mr. Zegers'] use of credit cards and [Ms. Garibay's] position against debt. [Ms. Garibay] credibly testified that it was the biggest reason for the split, and the evidence supported [Ms. Garibay] being frugal in spending, living within her means and [Mr. Zegers] not sharing that trait, creating an ongoing cycle of debt.

RP at 227-28.

Instead of awarding Mr. Zegers an offsetting share of equity, the court awarded

him 40 percent of the equity while awarding Ms. Garibay 60 percent. The court noted

that Ms. Garibay's increased share of equity would stand in lieu of maintenance, which

Ms. Garibay needed but Mr. Zegers could not afford. The court also awarded the parties

their separate vehicles—a 2017 Dodge Durango for Mr. Zegers and a 2017 Subaru

Legacy for Ms. Garibay—along with the loans attached to those vehicles.

Mr. Zegers timely appeals the trial court's dissolution order and attendant

findings.

## ANALYSIS

A.     PROPERTY AWARD

Mr. Zegers argues the trial court erroneously considered his spending habits when

allocating the community's debts because his spending on ordinary community expenses

did not rise to the level of waste. As explained below, we agree that the record is insufficient to apportion all, or even a substantial portion, of the consumer debt to Mr. Zegers.

*Standard of review*

We review a trial court's division of marital property for abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A trial court operates within its discretion when its findings derive from the factual record, its conclusions apply sound law, and its decisions are not manifestly unreasonable. *In re Marriage of Bowen*, 168 Wn. App. 581, 586-87, 279 P.3d 885 (2012). Findings properly derive from the factual record when they rely on substantial evidence. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is that "quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." *Id.*

*Breadth of discretion*

Under RCW 26.09.080, a trial court must divide marital property in a manner that "appear[s] just and equitable after considering all relevant factors." Factors the court must consider include (1) the nature and extent of community property, (2) the nature and extent of separate property, (3) the duration of the marriage, and (4) the parties' relative economic circumstances. RCW 26.09.080. Although the court may not consider

misconduct, it may consider which party's "fiscal improvidence" undermined community solvency and apportion property accordingly. *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991); *see also In re Marriage of Williams*, 84 Wn. App. 263, 270, 927 P.2d 679 (1996).

Here, the trial court complied with RCW 26.09.080 when it properly considered every factor outlined therein. The court noted the parties' separate and community assets, as well as the duration of the parties' marriage. The court's oral ruling contemplated the parties' economic circumstances at length. The court strove to accommodate the parties' financial challenges when it granted Ms. Garibay an extended interval in which to refinance her home and when it awarded Ms. Garibay a disproportionate share of the home's equity in lieu of maintenance.

However, the trial court abused its discretion when it identified Mr. Zegers' spending habits as a basis for assigning him the entirety of the community's consumer debt. Specifically, the court erred when it concluded that "evidence supported [Ms. Garibay] . . . living within her means and [Mr. Zegers] not sharing that trait, creating an ongoing cycle of debt." RP at 227-28. Contrary to this finding, nothing in the record suggests Ms. Garibay lived within her means. Similarly, the record does not suggest Mr. Zegers "creat[ed] an ongoing cycle of debt" in defiance of Ms. Garibay's better fiscal habits. RP at 228. While Ms. Garibay may indeed have stated a "position against debt"

8

at trial, the evidence suggests that during the marriage, she depended on debt just as Mr. Zegers did, and the debt in fact was incurred for the community. RP at 227.

Ms. Garibay argues that Mr. Zegers disproportionately facilitated the community's debt by charging joint and individual credit accounts. To support the conclusion that Mr. Zegers was personally liable for these debts, however, Ms. Garibay would need to show that his consumption drove the family's debt, as distinct from the community's consumption. Mr. Zegers' spending hardly may stand alone as his own "fiscal improvidence" where that spending fed the community's collective demands. *Marriage of Steadman*, 63 Wn. App. at 528.

Ms. Garibay made no showing related to Mr. Zegers' individual consumption. Indeed, despite examining numerous credit card statements, both individual and joint, Ms. Garibay failed to identify a single purchase Mr. Zegers made exclusively for himself rather than for the family. When pressed as to why she believed a certain credit card balance represented Mr. Zegers' separate debt, Ms. Garibay only said, "Because [Mr. Zegers] had the opportunity to pay the balance off and, instead, accrued other credit card debt." RP at 156. In other words, Ms. Garibay made no claim that Mr. Zegers individually consumed the goods or services the credit card was used to purchase.

Other evidence also supports this inference. Indeed, the record furnishes ample evidence that Ms. Garibay—along with Mr. Zegers—consumed resources at a pace that

outstripped the community's means. For example, the community could not have incurred any of the following expenses without Ms. Garibay's tacit or explicit approval:

- 2017 Subaru Legacy. The record does not indicate when Ms. Garibay acquired this vehicle, but it must have been between 2017 (the model year) and 2022, when the divorce came to trial. Ms. Garibay was aware that Mr. Zegers in 2017 cashed out his retirement account in order to satisfy credit card debt. Ms. Garibay also was aware the community took out an HELOC around this time to pay off other credit card debt. The community in 2017 earned just $56,655. Nevertheless—despite this modest income and despite the drastic measures the community had just undertaken to satisfy previous debts—Ms. Garibay evidently endorsed the purchase of a new or almost new vehicle.

- Home remodel. After the couple liquidated Mr. Zegers' retirement fund and took out an HELOC to satisfy credit card debt, Ms. Garibay agreed to use the balance of their HELOC to renovate their home extensively. Ms. Garibay did not testify as to any reservations about utilizing additional credit in this fashion. In other words, Ms. Garibay agreed to take on additional discretionary debt immediately after the couple undertook drastic action to eliminate debt.

- Vacations. Mr. Zegers testified that Ms. Garibay used a credit card intended

only for emergencies to pay for hotel stays when she took the children on road trips. Ms. Garibay did not contradict this testimony.

- Dominican Republic trip. In the midst of an expensive divorce that arose from arguments over debt, Ms. Garibay agreed it was appropriate to fund a trip to the Dominican Republic for the couple's teenage daughter. Ms. Garibay agreed to this expense despite testifying, about the condition of her family's home: "The kitchen is unfinished. I have holes in the floor and walls. There's electrical that needs to be done. The flooring needs to be put in. There are no doors in my kids's bedrooms. There are holes in their walls as well . . . ." RP at 142. In other words, after taking out an HELOC to fund home renovations, Ms. Garibay agreed to devote money to an international vacation rather than investing in completing the renovations.

- Guatemala trip. Ms. Garibay testified that she first discovered Mr. Zegers' questionable spending after she returned from a mission trip to Guatemala. The record does not indicate whether or to what extent Ms. Garibay herself funded the trip. However, to the extent Ms. Garibay made any contribution, she did so during a year when her household's income, for four people, was $56,655.

Because the trial court's finding that Mr. Zegers "creat[ed] an ongoing cycle of debt" while Ms. Garibay lived within her means finds no support in the record, that finding was in error. RP at 228. Because of this unsupported finding, the trial court assigned all of the consumer debt to Mr. Zegers. We remand for the trial court to allocate this debt in a just and equitable manner.

B.     HOME VALUATION

Mr. Zegers argues the trial court impermissibly adopted Ms. Garibay's tardily disclosed valuation of the parties' home where the only reliable evidence of valuation was the June 2021 professional appraisal. We disagree with the premise of this argument—namely, that the trial court adopted Ms. Garibay's valuation.

The court in its oral ruling gave due weight to the June 2021 appraisal of $292,000, which reflected a "snapshot in time." RP at 222. The court's analysis could not stop there, however, since the trial occurred more than 15 months after the appraisal. Citing language from the appraiser's report, the court found that the June 2021 value reflected a "red-hot seller's market." RP at 221. The court noted, "It's common knowledge that the real estate market has changed significantly since June of 2021. The repeated and historical interest rate hikes this year have significantly cooled the housing market." RP at 222. In support of its valuation—which is about five percent below the

June 2021 valuation—the court noted that Mr. Zegers probably did not submit his updated valuation because it was lower than $292,000.

In short, the record does not support Mr. Zegers' view that the trial court relied on Ms. Garibay's tardily disclosed lay valuation. Rather, it relied on the professional appraisal and evidence that real estate values were lower at the time of trial than when the appraisal was performed. We see no abuse of discretion.

Affirmed in part and remanded for reapportionment of consumer debt.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____        _____
Fearing, J.                                           Cooney, J.

13