[No. 31401-1-II.   Division Two.   May 17, 2005.]

DAVID MILES, *Respondent*, v. LYNDA M. MILES, *Appellant*.

*John T. Robson, Jr.*, for appellant.
*Terry A. Robinson*, for respondent.

¶1 HOUGHTON, J. — Lynda Miles appeals from an order quieting title to property she held as a tenant in common with her ex-husband, David Miles. She argues that the trial court erred in entering written findings of fact and conclusions of law that the evidence does not support. We agree and reverse and remand.

## FACTS

¶2 David and Lynda[1] married in September 1962. After 27 years of marriage, they separated in May 1990. With their dissolution pending, they purchased real property and a mobile home (the property) in June 1990. They paid $43,500, taking title in both of their names.

¶3 On August 10, 1990, a court commissioner dissolved their marriage. Along with the dissolution proceedings,

---

[1] We use the parties' first names for clarity.

they entered into a property settlement agreement (the Agreement).

¶4 In the dissolution decree, the commissioner ordered David to pay spousal maintenance of $1,200 per month for two years starting May 1, 1990.[2] During those two years, the commissioner ordered that Lynda remain a beneficiary of his life insurance policy and that he maintain her medical insurance coverage.

¶5 Neither the decree nor the Agreement distributed the property. As a result, David and Lynda became tenants in common.

¶6 David paid spousal maintenance for approximately four months, but due to financial difficulties, he stopped. He also lapsed in payment of Lynda's medical insurance. She paid the premiums for his life insurance policy until 1991.

¶7 Lynda never resided at the property but paid part of the down payment. David made most of the mortgage payments, paying off the debt in October 2001. He also paid homeowner's insurance and taxes, and maintained the property.

¶8 On December 14, 1994, David conveyed the property to Lynda by quit-claim deed. He never signed the title over to Lynda. No money changed hands, but the excise tax affidavit states that the gross sale price was $15,000. Lynda paid the excise tax and recorded the deed.

¶9 David filed for bankruptcy in 1996. In the bankruptcy schedule, he did not include an interest in the property or list maintenance owed to Lynda as a debt.[3]

¶10 In October 2001, David paid off the mortgage. On August 14, 2002, Lynda wrote David a letter, stating that he owed her $26,588.50 for unpaid spousal maintenance, medical bills, and life insurance. In the letter, Lynda suggested that David "arrange for a mortgage for $26,588.50" and stated that she would "sign over all papers at that time." Pl.'s Ex. 8.

---

[2] The decree incorporated the terms of the Agreement.

[3] At trial, David testified that these omissions were intentional.

¶11 On December 4, 2002, David sued to quiet title. In his complaint, he alleged that during the pendency of the dissolution, they "entered into an oral agreement at the time of execution of [the] loan, that [he] would assume permanent possession of [the property] and be wholly responsible for payment of said note obligation." Clerk's Papers (CP) at 4. David stated that he transferred his interest in the title to Lynda in 1994 to "avoid potential future creditor claims." CP at 4.

¶12 Lynda counterclaimed. She alleged that David executed a quit-claim deed on or about December 14, 1994, deeding his one-half undivided interest for good and valuable consideration. Further, she claimed that David breached his maintenance obligations and owed her $26,588.50. She demanded back monthly rental payments beginning in October 2001, and asked the court to evict him from the property. Finally, she asked the court to quiet title in her favor or compel him to execute title in her name.

¶13 The matter was tried before a retired superior court judge sitting pro tempore. At trial, David testified that they did not include the property in the Agreement "because I was told by Lynda that we wouldn't be able to get a loan to get the property if we let [the bank] know that we were getting divorced." Report of Proceedings (RP) at 17.

¶14 David testified that in 1994, he had some financial troubles. He explained that he conveyed the property to Lynda because "she came to me and said that . . . I should put my half over into her name to protect the house and that she was worried about her credit because her name was on the loan." RP at 22.

¶15 On direct examination, David's counsel asked about reconveyance:

Q. . . . Now, what agreement was there between you and your wife as to reconveyance of this property to you?

A. I don't think anything was said then. It was just—I just assumed that once it was paid off—which we talked about before—once the loan was paid off that she would convey it back over to me.

RP at 24. David testified that after he paid off the mortgage, he asked Lynda to reconvey the property. In response, she sent him the August 14, 2002 letter.

¶16 Defense counsel pressed this issue further on cross-examination:

> Q. And you . . . said that at the time of that conveyance there was no discussion between the two of you that she would ever give that back to you at the end.
>
> A. I don't recall any discussion. It was just assumed.
>
> Q. By you.
>
> A. Well, it was assumed by her too because she didn't tell me any different.
>
> Q. But your testimony was that you did not discuss that with her at the time. How do you know that she knew what you were thinking if it was not said out of your mouth?
>
> A. Well, it must have been said before we went to court because it was understood. It was understood by both of us that that was—that that was to be conveyed to me.

RP at 41-42.

¶17 In contrast, Lynda testified that she approached David about the 1994 conveyance "to protect my interest in what I paid down on the mortgage, on what he owed me, and the fact that it was half mine. It was in my name." RP at 63. She stated that David never asked her to reconvey the property to him.

¶18 At the conclusion of the bench trial, the trial court issued an oral ruling. First, it enumerated those issues it chose not to address: (1) whether David and Lynda committed unlawful acts when they secured a loan for the purchase of the property but did not inform the bank of pending dissolution proceedings, (2) whether they committed unlawful acts when he gave her a quit-claim deed to avoid bankruptcy creditors, (3) whether the terms of the dissolution and Agreement were fair, and (4) whether David was liable for back maintenance.

¶19 The trial court found that both parties had an interest in the property upon dissolution:

We have the circumstances here where Mr. Miles lived in the property. He made all of the mortgage payments. He maintained the property. He has had everything to do with it, and she has had nothing to do with it. So that puts things on his side of the column.

We look over at the other side, and if she didn't put up the whole $8,635 down payment—I don't have any problem that—finding that she put up at least $7,000 of it. And the parties knowingly put it in the names of both tenants in common; didn't name it in the dissolution. Whether that was the attorney's fault or their doing doesn't matter. That is fact. So she has an interest in that property at that point. And we can't just say, oops, well, that was intended to give him a place. I don't know that.

RP at 91.

¶20 As to the effect of the quit-claim deed, the court found that the parties "co-mingled" the issue and "muddied it up." RP at 92. But it did not address whether the deed constituted a valid contract.

¶21 Valuing the property at $43,500, the court quieted title to David and awarded Lynda a judgment lien against the property in the sum of $21,750.

¶22 A sitting superior court judge issued the decree to quiet title and entered written findings and conclusions. Lynda appeals.

## ANALYSIS

¶23 Lynda first contends that substantial evidence does not support the court's written findings of fact. We agree.

¶24 If supported by substantial evidence, we do not reverse a trial court's findings of fact on appeal. *Rogers Potato Serv., L.L.C. v. Countrywide Potato, L.L.C.*, 152 Wn.2d 387, 391, 97 P.3d 745 (2004). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth. *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002), *review denied*, 149 Wn.2d 1025 (2003). We consider unchallenged findings of fact

verities on appeal. *Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 792, 98 P.3d 1264 (2004). The findings of fact must support the conclusions of law. *State v. Graffius*, 74 Wn. App. 23, 29, 871 P.2d 1115 (1994). Even when mislabeled as findings of fact, we review conclusions of law de novo. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

¶25 The fact finder measures witness credibility, and we do not review that determination on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶26 Lynda assigns error to findings of fact 3 and 5, both entered by the second judge. Finding of fact 3 reads:

> That the parties were divorced by Decree of Dissolution of Marriage on May 4, 1990 [sic][4] after a 27 year marriage. The above described real property and mobile home was [sic] not divided between the parties by Decree. Each party owned an undivided one half interest in the real property and mobile home as Tenants in Common. *The parties agreed the Plaintiff [David] would occupy the home as his exclusive residence and the Defendant [Lynda] would convey her interest on satisfaction of the outstanding mortgage.*

CP at 35-36 (emphasis added). Finding of fact 5 states:

> That the Plaintiff [David] brought suit to quiet title claiming exclusive ownership of said real property and mobile home. The Plaintiff [David] is awarded title in fee simple to said real property and mobile home subject to a judgment lien in the sum of $21,750.00 in the name of the Defendant, Lynda Miles.

CP at 36.

¶27 Substantial evidence does not support finding of fact 3. Notably, it does not comport with the trial judge's oral ruling.[5] First, when deciding that both parties had an

---

[4] As noted, the court commissioner signed the decree of dissolution on August 10, 1990.

[5] We ordinarily look to the court's written findings, but here, the judge who signed the written findings did not hear the evidence presented and the written findings do not find support in the transcript of the oral ruling.

interest after dissolution, the trial judge expressly stated that he could not rule on the exclusive residence issue:

> We have the circumstances here where Mr. Miles lived in the property. . . . So that puts things on his side of the column.
>
> We look over at the other side, . . . I don't have any problem . . . finding that she put up at least $7,000 of [the down payment]. And the parties knowingly put it in the names of both tenants in common. . . . That is fact. So she has an interest in that property at that point. *And we can't just say, oops, well, that was intended to give him a place. I don't know that.*

RP at 91 (emphasis added). David and Lynda presented contradictory evidence as to whether they purchased the property as his exclusive residence. The fact finding judge measured their credibility and expressly ruled that he could not determine the parties' intentions. Accordingly, substantial evidence does not support that portion of finding of fact 3.

¶28 Further, substantial evidence does not support the finding that Lynda would convey her interest on satisfaction of the mortgage. This issue was the heart of the disagreement. Lynda claimed to be the sole owner of the property, but David argued that the parties made an oral agreement to reconvey the property upon satisfaction of the mortgage. Other than stating that the parties "co-mingled" and "muddied" the issues with the quit-claim deed, the oral ruling did not address the alleged oral contract. We leave credibility determinations to the fact finder. *Camarillo*, 115 Wn.2d at 71. Because a rational, fair-minded person would not be persuaded of the finding's truth, substantial evidence does not support it.

¶29 Turning to finding of fact 5, this finding is a conclusion of law. It contains the legal conclusion and judgment of the court, quieting title in David and awarding a judgment lien to Lynda. As such, we review finding of fact 5 de novo. This conclusion is premised on the unsupported written findings. Because no underlying facts serve as the basis for this legal conclusion, we must reverse and remand.

¶30 We reverse and remand for entry of written findings and conclusions consistent with those the fact finder actually decided.[6]

QUINN-BRINTNALL, C.J., and BRIDGEWATER, J., concur.

---

[6] Lynda raises other assignments of error. Because substantial evidence does not support the written findings, we do not reach those issues. Further, we note that Pro Tempore Judge Waldo F. Stone presided at trial, but Judge James R. Orlando entered written findings and conclusions. Because Pro Tempore Judge Stone heard the evidence, we reverse and remand for written entry of his findings and conclusions.