# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

TODD HEMRICK,

Appellant,

and

LAMONICA HUMMEL,

Respondent.

No. 78086-7-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 16, 2019

MANN, A.C.J. — Todd Hemrick appeals the trial court's dissolution decree awarding spousal support and a BMW automobile to LaMonica Hummel. He also challenges the court's order that he repay Hummel $55,000 on a promissory note referenced in the parties' prenuptial agreement, and he alleges the court abused its discretion in awarding Hummel attorney fees. We affirm.

I.

LaMonica Hummel and Todd Hemrick married on July 25, 2003, and separated in early February 2016. Following a three-day trial in October 2017, the trial court entered a decree of dissolution on December 27, 2017. The court limited the findings and conclusions of that decree to those related to the court's jurisdiction to enter a decree of dissolution, in order to enable the parties to be divorced before the end of

December, 2017. The court reserved the remaining issues for a later date. On February 7, 2018, the court entered amended findings and conclusions and an amended final decree of dissolution addressing the balance of the issues in the case.

Prior to their wedding, Hemrick and Hummel entered into a prenuptial agreement. The exhibits attached to the agreement illustrate the financial condition of each of the parties prior to their marriage. Hummel owned a home valued at approximately $500,000, with a mortgage of $264,000. In addition, she had assets in savings, investment, and 401(K) accounts totaling about $400,000. Hemrick had less than $100 in a checking account and owned a car valued at approximately $15,000. He also owned 1.65 million membership units of a limited liability company he had established called Blue Chip Resources, and 101,500 shares of a company called Mercer Group, Inc. The value of these assets was listed as "unknown." Hemrick's liabilities included $8,000 owed on an auto loan, $36,000 in back income taxes, and $55,000 owed to Hummel on a promissory note for a loan she made to him in connection with the founding of Blue Chip Resources.

As the trial court noted, by the time of their separation, Hummel's separate assets had largely been depleted. Over the course of the marriage, the couple incurred approximately $218,000 in community debt, all of it in Hummel's name. Hemrick contributed little toward paying down this debt.

The trial court found that the prenuptial agreement signed by the parties two days before they were married was valid. The agreement specified that neither the marital community nor Hemrick had an interest in, or lien upon, Hummel's home. The court therefore awarded that property to her. The court also ordered Hemrick to pay Hummel

2

$55,000 as required by the promissory note referenced in the agreement and attached exhibit.

The trial court found that the couple's community property consisted of a BMW automobile with Hummel's name on the title. Both Hummel's original and amended petitions for dissolution listed the BMW among the property to be awarded to Hemrick, along with the remaining $12,000 owing for its purchase. Hummel changed her position in April 2016, however, and from that point on she sought return of the vehicle, partly because Hemrick had not complied with the court's temporary order requiring him to obtain separate financing for the vehicle. In the final decree, the court awarded the automobile to Hummel, explaining that because Hemrick had been required to surrender his driver's license following his plea of "no contest" to a charge of impaired driving in North Carolina, he would not be permitted to drive for a significant period of time.

Addressing the community debt, the court found that a total of over $217,000 in debt had been accumulated on Hummel's home equity line of credit and on credit cards that were in Hummel's name. The community debt also included the BMW car loan of about $12,000 and a debt to the IRS of $6,500 in Hemrick's name. The court awarded the BMW loan to Hummel and the IRS debt to Hemrick.

Of the $217,000 in community debt, the court determined that the sum of $150,000 should be divided equitably, and that Hemrick should receive a credit for $2,000 for a riding lawnmower he claimed was his separate property. To effect the repayment of these funds, the court ordered Hemrick to pay $73,000 to Hummel in the form of spousal maintenance, in payments of $1,000 per month for 73 months.

3

Finally, the court ordered Hemrick to pay $45,568 in attorney fees Hummel accrued during the period leading up to the trial date. The basis for the court's award was Hemrick's intransigence, which the court found contributed to Hummel's attorney fees. Hemrick was not ordered to pay additional attorney fees that accumulated during the trial or in posttrial motions afterward.

Hemrick appeals.

## II.

In a dissolution action, the trial court must order a just and equitable distribution of the parties' property and liabilities, after considering all the relevant factors. RCW 26.09.080; In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). In making this distribution, "the trial court has broad discretion . . . and its decision will be reversed only if there is a manifest abuse of discretion." Id. at 242-43 (citing In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002)). A manifest abuse of discretion occurs "when the court's decision is outside the range of acceptable choices or based on untenable grounds or untenable reasons." Wixom v. Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015).

Findings of fact may be overturned only if they are not supported by substantial evidence in the record. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." Id. Unchallenged findings of fact, however, are verities on appeal. Miles v. Miles, 128 Wn. App. 64, 69-70, 114 P.3d 671 (2005). With just one exception, addressed in Section A below, Hemrick did not challenge any of the court's findings of fact, so they are verities in this appeal.

A.

Hemrick argues the court abused its discretion in awarding spousal maintenance to Hummel because she does not need it and he cannot afford to pay it. He contends the court failed to adequately consider the statutory factors and to give paramount concern to the parties' post-dissolution economic condition. See RCW 26.09.080(a), (f); In re Marriage of Sheffer, 60 Wn. App 51, 54, 802 P.2d 817 (1990) (remanding for revision of maintenance award where the parties had been in a long-term marriage and the superior earning capacity of one spouse was one of the few assets of the community). We disagree.

An award of spousal maintenance is within the discretion of the trial court. In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). The only limitation on the amount and duration of maintenance under RCW 26.09.080 is that, in light of all the relevant factors, the award must be just. In re Marriage of Morrow, 53 Wn. App. 579, 585, 770 P.2d 197 (1989). The statutory factors are not exclusive. Id.

Hemrick misapprehends the core purpose of the trial court's award of maintenance. Rather than attempting to equalize the parties' post-dissolution standard of living for a period of time, the trial court awarded maintenance here to achieve a fair and equitable division of the community debt. The court found that $150,000 represented the marital debt that should be divided between the parties evenly, and after crediting Hemrick $2,000 for the riding lawn mower, held him accountable for $73,000. In awarding maintenance of $1,000 per month for 73 months, the court concluded:

> Though full disentanglement would be preferable, spousal support is a flexible tool which enables the court to make just and equitable financial orders for the

5

parties post-divorce. For this reason, <u>as well as assessing ability to pay</u>, spousal support must be ordered to be paid by [Hendrick] to [Hummel] in order to reach a just and equitable division of assets and debts in this case, and <u>in lieu of a bulk payment of 73k.</u>[1]

The court did not abuse its discretion. As the court's analysis makes plain, it considered Hemrick's ability to pay in determining that structuring the award into monthly payments of $1,000 was more just and equitable than awarding a lump-sum payment of $73,000. Awarding spousal maintenance for these reasons is within the discretion of the court. In <u>In re Marriage of Washburn</u>, 101 Wn.2d 168, 677 P.2d 152 (1984), the Supreme Court determined that one spouse who supports the other through professional school, with the expectation that the marital community will enjoy a resulting financial benefit, should be compensated if the marriage dissolves before that benefit can be realized. The court held that "[w]here the assets of the parties are insufficient to permit compensation to be effected entirely through property division, a supplemental award of maintenance is appropriate." <u>Washburn</u>, 101 Wn.2d at 178. See also <u>In re Marriage of Barnett</u>, 63 Wn. App 385, 388, 818 P.2d 1382 (1991) (holding that the court erred in awarding maintenance to distribute to the wife her share of the husband's business, where a lien awarded on the business already accomplished the division of the property).

Hemrick also argues that Hummel, who testified she earns over $100,000 per year, is self-supporting and capable of affording the lifestyle the couple had while married. In contrast, he argues, his income at the time the Amended Decree was entered was $1,195 per month. Hemrick's argument is unpersuasive. There is no

---

[1] (Emphasis added.)

evidence in the trial record to support Hemrick's assertion regarding his income; Hemrick's citations to his own opening statement and to declarations he submitted in posttrial motions are not before us and will not be considered. Morgan v. Briney, 200 Wn. App 380, 394, 403 P.3d 86 (2017) (citing State v. Curtiss, 161 Wn. App. 673, 703, 250 P.3d 496 (2011)). Moreover, the court made a specific finding that Hemrick was not a credible witness. This court does not weigh witness credibility. Issues of credibility are left to the trial court and will not be disturbed on appeal. In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011) (citing In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).

The trial court found that Hemrick is a "self-described, high-level business executive, who . . . is more than capable of self-support," and the record as a whole tends to show that, during his marriage to Hummel, Hemrick earned several thousand dollars per month from contracts he had negotiated or help negotiate while acting as an independent contractor. In fact, a financial affidavit Hemrick submitted in April 2016 reported his monthly gross income to be over $3,600, although he was not employed at the time. The court also found that while Hemrick lives with his mother and his fiancée in a home with three incomes, Hummel depends solely on her own income while simultaneously facing a life-threatening disease that requires she undergo weekly medical tests and take chemotherapy medication indefinitely.

The trial court did not abuse its discretion in awarding maintenance to Hummel.

B.

Hemrick challenges the court's award of the BMW automobile to Hummel. Hemrick asserts that, prior to October 2017, he had made all of the monthly payments

on the car loan, a total of $10,600, that Hummel does not need the BMW, because she has another car, and that Hummel did not want the BMW returned to her; rather, she wanted the title transferred to Hemrick's name. Hemrick also contends that the court erred by relying on Hemrick's January 2018 impaired driving conviction in awarding the vehicle to Hummel. We disagree.

Hemrick's factual assertions are largely unsupported by the record. Hemrick relies on a motion for reconsideration he filed in the trial court in February 2018 to support his contention that he invested over $10,000 in the BMW. There is no evidence in the trial record to support this statement, and his declaration to that effect in a posttrial motion does not provide a credible basis to overcome the trial court's findings. Hummel testified that Hemrick did make some of the payments on the BMW, though not all of them. She also testified that although she did not want the BMW at the time the couple separated, she needed Hemrick to obtain a loan in his own name so that she would not be financially liable for the payments. Hummel was concerned about her credit rating and about her potential liability on the car loan after Hemrick took the car to North Carolina, because Hemrick had missed insurance payments he was required to pay and threatened to destroy the vehicle. Hemrick never secured separate financing for the BMW, and at the time of trial, Hummel sought to have the car returned.

Hemrick also argues that because Washington law requires the court to divide property without regard to misconduct, RCW 26.09.080, the court erred in considering the status of Hemrick's driving privileges when it awarded the BMW to Hummel. Hemrick relies on In re Marriage of Zandi, 187 Wn.2d 921, 929, 391 P.3d 429 (2017), and In re Marriage of Steadman, 63 Wn. App. 523, 528, 821 P.2d 59 (1991). Neither of

these cases supports Hemrick's position. In Steadman, the court held that "marital misconduct," for purposes of division of property refers to "immoral or physically abusive conduct within the marital relationship," but does not encompass gross fiscal improvidence, squandering marital assets, or deliberately incurring tax liabilities. Steadman, 63 Wn. App. at 528. In Zandi, the Supreme Court held that, where there was no evidence of bad faith or unreasonable conduct, and the trial court made no findings suggesting fault, there was no basis to look beyond the general rule that marital misconduct is irrelevant in dissolution-related proceedings. Zandi, 187 Wn.2d at 929. Moreover, Zandi involved a question of interpretation of statutory language, which, as the court noted, cannot be influenced by fundamentally factual concerns of a party's fault. See id. at 926-27, 930. Zandi is therefore inapposite.

Here, the trial court did not improperly factor immoral, physically abusive, or any other kind of marital misconduct into the decision regarding the BMW. The court found that Hemrick pled "no contest' to a charge of impaired driving in North Carolina, and that one of the conditions of his probation required him to surrender his driver's license and not operate a motor vehicle until his driving privilege was restored. The court found that Hemrick would not likely be permitted to drive "for a substantial period of time." None of these findings were challenged by Hemrick, and the court's findings do not amount to findings of marital misconduct. This basis for the court's decision turns on the practical reality of Hemrick's driving privilege, not on whether his behavior constituted misconduct.

Hemrick further argues that Washington law permits a person in his situation to drive with an ignition interlock device in place, and that therefore the court's ruling was

inappropriate. Yet, even if Hemrick would be eligible for such an accommodation in Washington, that is irrelevant here, because he was charged and convicted in the state where he now resides, North Carolina.

The court did not rely solely on the status of Hemrick's driving privileges in awarding the BMW to Hummel. The court also found that failure to make the car loan payments would have an adverse effect on the parties' credit ratings. Given that the car loan was in Hummel's name alone, only she faced adverse consequences to her credit rating in the event of missed payments. Hemrick had, by the time of trial, already missed loan payments on the car, which Hemrick had covered to avoid harm to her credit history. The court also briefly noted Hemrick's threats related to the car, which could reasonably be interpreted to mean he had considered or was considering damaging or destroying it while it remained Hummel's financial responsibility. These additional grounds for awarding the vehicle to Hummel were, like Hemrick's driving privileges, within the discretion of the trial court to consider.

The court did not abuse its discretion in awarding the BMW to Hummel.

## C.

Hemrick challenges the court's order to pay Hummel $55,000 on the promissory note that the trial court found had been incorporated by reference in the parties' prenuptial agreement. Hemrick does not challenge the trial court's determination that the prenuptial agreement is valid and binding. He claims that there is no evidence that he owes the $55,000 debt to Hummel, because the promissory note was not referenced in the prenuptial agreement and Hummel did not produce the promissory note at trial. We disagree. Hemrick's arguments fail both factually and legally.

Hemrick argues that because the promissory note was not admitted at trial, the court erred in ordering him to repay Hummel. Hummel testified at trial that she could not locate the promissory note. Contrary to Hemrick's contention, Hummel's inability to locate the note does not mean either it, or the debt it represents, do not exist. Under RCW 62A.3-309(a), a person who does not have possession of an instrument is entitled to enforce it if (a) the person was in possession of the instrument and entitled to enforce at the time it was lost, (b) the loss of the instrument was not the result of a transfer or lawful seizure, and (c) the person cannot reasonably obtain the instrument because it has been destroyed, it cannot be found, or it is in the wrongful possession of an unknown person or a person who cannot be found or is not amenable to process.

Hemrick does not attempt to show that Hummel did not meet the test of RCW 62A.3-309(a); rather, he argues that Hummel cannot prove the terms of the agreement or her right to enforce it, because it was not actually incorporated by reference in the parties' prenuptial agreement. Absent such incorporation by reference, Hemrick contends, the existence of the promissory note "has not and cannot be established." Hemrick's argument is refuted by the prenuptial agreement on its face, which plainly identifies the note and the debt. The agreement provides in Paragraph I.B. that Hemrick's separate assets and liabilities are listed in "Exhibit A," a page that is attached to the agreement, numbered in sequence with the main body of the agreement, and which was initialed by the parties in the same manner as every other page of the agreement. According to Paragraph I.B., Exhibit A "sets forth the estimated fair market value of [Hemrick's separate] assets and the liabilities (if any) to which they may be subject." Included among the separate liabilities belonging to Hemrick is a "promissory

11

note in favor of LaMonica Hummel" valued at $55,000. The prenuptial agreement was admitted into evidence as a single document of 14 numbered and initialed pages, one of which was Exhibit A. There is no legitimate argument that the prenuptial agreement does not identify the promissory note and incorporate it by reference.

Even if there had been a genuine issue concerning the promissory note and Hemrick's debt to Hummel at trial, the evidence admitted at trial included a voice mail message Hemrick left for Hummel on November 30, 2016, in which he concedes the promissory note exists, gives Hummel suggestions about where to look for it, and reaffirms that he will pay Hummel: "You want me to pay it? I'll pay it bitch. I don't fucking care."

The court did not err in ordering Hemrick to repay Hummel the $55,000 debt memorialized in the prenuptial agreement.

### D.

Finally, Hemrick challenges the trial court's order awarding attorney fees to Hummel. The court based its award on Hemrick's intransigence during the proceedings. Hemrick argues that there was no evidence to show that he prolonged the proceedings or made the matter more difficult or costly. We disagree.

We review a trial court's decision on attorney fees for an abuse of discretion. Goodell v. Goodell, 130 Wn. App. 381, 393, 122 P.3d 929 (2005); In re Marriage of Bobbitt, 135 Wn. App. 8, 29-30, 144 P.3d 306 (2006).

Pursuant to RCW 29.09.140, the court in a dissolution matter may enter an award of fees after considering the financial resources of each party. The court may also enter an award of fees when one party's intransigence causes the other party to

incur additional legal costs. In re Marriage of Foley, 84 Wn. App. 839, 846, 930 P.2d 929 (1997). Intransigence is the quality or state of being uncompromising. In re Marriage of Schumacher, 100 Wn. App. 208, 216, 997 P.2d 399 (2000) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1186 (3d ed. 1993)). "Determining intransigence is necessarily factual, but may involve foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly." In re Marriage of Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015) (citing In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992)).

Contrary to Hemrick's claim that there was no evidence to support the court's award of fees, the trial court entered detailed findings regarding Hemrick's intransigence:

> The respondent committed many acts of intransigence when he sent repugnant and sad email, text and voice mail messages to the petitioner during the period March 2016 through December 2016. These messages were intransigent in nature and created a nearly constant need in the petitioner to incur attorney fees and costs in conferring with her attorney regarding these messages which she rightfully perceived to be very threatening in nature.
>
> The respondent also was intransigent for not following the requirements of the court's orders. For example, although the May 4, 2016 'Order on Respondent's Motion to Modify the Temporary Order Dated 2/22/16', required the respondent to begin reimbursing for the $75 monthly expense for the BMW automobile in his possession on November 1, 2106, [sic] he failed to do so.
>
> The respondent was to retrieve his belongings on the date and time set forth in the above order during a two hour time frame on May 5, 2016. The police had to be called to keep the peace as a result of the respondent's intransigence.
>
> . . .

13

The parties were required by court order to exchange settlement proposals. The petitioner promptly made a settlement proposal and the respondent did not.

The record amply supports the court's finding that Hemrick's conduct contributed to Hummel's attorney fees. His voice messages, texts, and emails, which the trial court describes as "repugnant and sad" were very vicious and threatening, and Hummel appropriately felt the need to keep her attorney apprised of them. Eventually, as Hummel testified, she began forwarding Hemrick's messages to her counsel so that he could listen to them and advise her. Many of Hemrick's voice messages related specifically to what he would or would not do in connection with the dissolution proceedings, creating difficulties for Hummel and her counsel. These communications, in addition to his failure, and on occasion outright refusal, to cooperate with the court's process, clearly magnified Hummel's fees.

The court awarded Hummel $45,568 in attorney fees, which represented the amount of fees incurred up to the trial date. The court did not award fees Hummel incurred during trial or during posttrial motions. Under the circumstances, the court did not abuse its discretion in awarding fees based on Hemrick's intransigence.

## E.

Hummel requests attorney fees and costs on appeal. RAP 18.1 allows this court to award fees and costs if authorized by an applicable law. RCW 26.09.140 provides for attorney fees on appeal. In exercising discretion under this statute, the court considers "the arguable merit of the issues on appeal and the parties' financial resources." In re Marriage of Raskob, 183 Wn. App. 503, 520, 334 P.3d 30 (2014). In considering whether to award fees, the court generally balances the need of the

requesting party against the other party's ability to pay. In re Marriage of Crosetto, 82 Wn. App. 545, 563, 918 P.2d 954 (1996). However, as noted above, when intransigence is established, the financial resources of the party seeking attorney fees are irrelevant. Morrow, 53 Wn. App. at 591.

As Hummel argues, Hemrick argued that the trial court's decision should be reversed and the case remanded to provide Hemrick with a fair trial. We reject the suggestion that Hemrick did not receive a fair trial in the superior court. The proceedings were fair and the court's judgment was reasonable and well within the judge's discretion. In contrast, many of Hemrick's arguments border on being frivolous, such as the argument that the prenuptial agreement does not include page 13, and that the award of maintenance was unfair because Hummel did not need support.

We grant Hummel's request for fees and costs.

Affirmed.

_____
Mann, ACJ.

WE CONCUR:

_____          _____