# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KALEENA ANNE SAYSON, | No. 84168-8-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ADOLFO ESPINOZA, JR., | |
| Respondent. | |

BIRK, J. — Kaleena Sayson appeals from the superior court's finding that Adolfo Espinoza was in compliance with its order that he surrender all firearms and dangerous weapons. Sayson asserts that Espinoza did not satisfy his burden of proof, as he failed to account for all firearms and weapons shown to be previously in his possession. We agree, reverse the superior court's order on compliance review, and remand for further proceedings.

I

Sayson testified that she and Espinoza were in a dating relationship the fall of 2020 until September 2021. Early into their relationship, Espinoza turned violent and controlling. Espinoza constantly monitored Sayson's whereabouts, insisting that she share her phone's location and showing up randomly to "check on" her. Espinoza would often check Sayson's phone to see if she was communicating with any male friends, and threatened those male friends out of jealousy. He would

also drive Sayson's car and leave it with no gas so that she could not go anywhere on her own.

On July 15, 2021, Espinoza appeared at the home of Sayson's friend in Port Orchard and told Sayson that if she did not come out, he would shoot up the house. After Sayson came out of the house, Espinoza pointed his gun at her and forced her into the car. He drove to a deserted parking lot, ripped off her shirt, pulled on her hair, and strangled her. Espinoza was pointing a cocked and loaded handgun in Sayson's face during the duration of this incident.

Espinoza sent multiple photographs to Sayson via text message or social media of him holding handguns.



He also sent photographs of just the guns themselves, sometimes accompanied by a threatening text message. As an example, after he noticed Sayson talking to male friends over social media, Espinoza sent her a picture looking down the barrel of a handgun with the caption "Keep posting allat dumb shit on [F]acebook Kaleena."



The relationship came to an end on September 16, 2021. On that day, Espinoza chased Sayson with his vehicle while shouting at her "you better run bitch I'm going to kill you." Sayson was able to escape only by jumping over a

barrier into a stranger's yard and knocking on their door for assistance. Surveillance footage showed Espinoza driving past the stranger's house looking for Sayson.

The following day, Sayson filed a petition for an order of protection. Initially, her petition was denied. The trial court granted Sayson a new hearing pursuant to CR 59 due to procedural irregularities at the first hearing.

At the second hearing, Sayson presented her own testimony, as well as the declarations of her mother and the stranger in whose yard she sheltered. Sayson also presented multiple threatening photographs that Espinoza had sent to her, all of which depicted firearms. All of the photographs were taken either in Espinoza's room or in his mother's car. None depicted any persons other than Espinoza. In total, five firearms were pictured in the various photographs: a silver and black shotgun, a black handgun, a silver handgun, an AR-15, and a wood-handled handgun.

Following the second hearing, the trial court granted Sayson's petition and entered a protection order prohibiting Espinoza from contacting Sayson for the next five years. In conjunction with the protection order, the trial court ordered Espinoza to immediately surrender his pistol, shotgun, and any other dangerous weapon in his possession to law enforcement. Espinoza surrendered a Dickinson pump shotgun to the Seattle Police Department, but did not surrender any other weapons.

The superior court held the first of its compliance hearings on December 15, 2021. At the hearing, Espinoza testified under oath that the AR-15 was actually an airsoft gun, that the wood-handled handgun was a pellet gun, and that any actual firearms did not belong to him. When the superior court asked Espinoza for the name of the person who he claimed owned the firearms, he refused to provide it. Espinoza described the alleged owners of the firearms as "my associates" or "my known people that I hang out with," and "my closest friend." But he stated that he wished to keep "my loved ones out of this situation." Sayson testified that she had seen him with at least one handgun outside the presence of any other persons, adding "I've never even met these friends." The court stated, "I don't think I believe you that these handguns are . . . not yours, but the way I could believe you . . . is if you provide information from someone else saying that they're theirs." Accordingly, the superior court ordered that, prior to the next compliance hearing, Espinoza

> must supply declarations from the owners of the handguns that those handguns do not belong to Mr. Espinoza and that the owners are aware that he is subject to an order that he not possess firearms and that they will not allow him access to their firearms. Finally he must provide photos or other documentation demonstrating that the Black AR-15 is an airsoft not a real firearm and that the wood-handled handgun is a pellet gun.

The next compliance hearing was conducted on January 20, 2022, before a different judge. Espinoza did not file anything with the court prior to the hearing, as he had been ordered to do. Espinoza told the court that he "kind of had a fall-out with people – not a fall-out, but . . . I'm not around the people that I was before."

5

Espinoza still refused to provide the alleged gun owners' names when asked. Espinoza also stated that he could not find the pellet gun with the wooden handle. The superior court continued the hearing for one week to allow Espinoza to submit documentation he claimed to have. The court informed Espinoza on the record that the order entered on December 15 remained in effect.

At the compliance hearing on January 27, 2022, Espinoza testified that he "tried to comply" with the court's order that he obtain a declaration, but stated, "we did have a falling out" and there was "no contact between us." Espinoza again refused to provide the name or contact information of the person or persons he claimed owned the black and silver handguns. Espinoza denied having possession of the handguns and invited a search of his house. Although the superior court accepted Espinoza's explanation that the AR-15 and wood-handled handgun were not firearms, it nevertheless found that they were dangerous weapons that needed to be surrendered to law enforcement. The court further informed Espinoza that, in order to avoid a finding of contempt, Espinoza would "have to file that declaration of non-surrender detailing where you believe the gray-black handgun and the silver handgun are and why they're not in your possession." At the request of Sayson's attorney, the court indicated Espinoza's evidence would need to "actually account" for the whereabouts of the firearms.

The superior court entered an order finding that Espinoza was not in compliance with the order to surrender weapons and directed that the next court date would be a contempt hearing. The order stated that Espinoza "must

6

surrender his two pellet guns (the AR-15 replica; the brown 'John Wayne' pellet gun) to Seattle Police. Respondent must file a declaration of non-surrender accounting for grey/black handgun and silver handgun." The order warned Espinoza that he may be held in contempt if he failed to immediately comply. The court set the contempt hearing for February 10, 2022.

On the morning of February 10, 2022, Espinoza filed a document entitled "Proof of Surrender" declaring, under penalty of perjury, that he had "surrendered all: firearms [and] dangerous weapons to [the] Seattle Police Department." Accompanying the Proof of Surrender was a document entitled "Receipt for Surrendered Firearms, Other Dangerous Weapons and Concealed Pistol License," stating that one "AR-15 BB gun" had been surrendered to "Off. Blake" of the Seattle Police. The document was not signed by law enforcement. Six minutes after the hearing was scheduled to begin, Espinoza also filed a declaration wherein he declared, under penalty of perjury, "That I do not own nor do I have access to the fire arms and or dangerous wepons [sic] that I am being accused of possessing." At the hearing, Espinoza still did not identify the person or persons he contended owned the handguns. The court inquired of Espinoza about the handguns:

> Mr. Espinoza, I want to go back to the silver handgun. You previously testified that that handgun was not yours, that it was a friend's, and you are in no --
> MR. ESPINOZA: Correct.
> THE COURT: No longer in contact with that individual; is that correct?
> MR. ESPINOZA: Correct.
> THE COURT: So your sworn testimony is that that silver handgun is not in your orbit, right? If you wanted to go --

7

> MR. ESPINOZA: Correct.
> THE COURT: -- to your car or go to your work, go to your garage or your bedroom, your testimony is that you cannot access that handgun?
> MR. ESPINOZA: I cannot access any type of firearm.
> THE COURT: Okay. Does that include the gray and black handgun that was referenced in the social media posts as well?
> MR. ESPINOZA: Correct.

The superior court did not inquire further about either of the handguns.

The superior court found that Espinoza had proved by a preponderance of the evidence that he was in compliance with the order to surrender. Sayson, in conjunction with the King County Prosecuting Attorney's Office, moved for reconsideration, arguing that Espinoza had not met his burden pursuant to Braatz v. Braatz, 2 Wn. App. 2d 889, 413 P.3d 612 (2018).

The court disagreed and denied the motion. Although the court noted that the judge at the first compliance hearing had found Espinoza's explanation about the handguns not credible, the court indicated that it had reached a different conclusion after reviewing the evidence submitted on February 10 and "necessarily found that [Espinoza's] current testimony on this issue was credible." Sayson appeals.

II

Sayson contends that the superior court's finding that Espinoza was in compliance with the order to surrender weapons is not supported by substantial evidence. Upon review of the record, we agree.

A

We review challenged factual findings to determine whether the findings are supported by substantial evidence. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "Substantial evidence exists when the record contains evidence of sufficient quantity to persuade a fair-minded, rational person that the declared premise is true." Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 112, 937 P.2d 154, 943 P.2d 1358 (1997). Under this standard, facts and inferences are viewed in the light most favorable to the party that prevailed in the trial court. Phoenix Dev. Inc. v. City of Woodinville, 171 Wn.2d 820, 828-29, 256 P.3d 1150 (2011).

Pursuant to RCW 9.41.800(6), when a court issues a domestic violence protection order such as the one issued here, it must also order the restrained party to surrender all firearms, dangerous weapons, and concealed pistol licenses to law enforcement. Within five days of the order, the restrained party must file a proof of surrender and receipt form or a declaration of nonsurrender form. RCW 9.41.804. The trial court may set a review hearing to determine whether the restrained party has complied with the order to surrender.[1] RCW 9.41.801(6).

The burden of proof is on the restrained person to demonstrate, by a preponderance of the evidence, that they have surrendered all firearms and other dangerous weapons. Braatz, 2 Wn. App. 2d at 897. While the proof of surrender

---

[1] RCW 9.41.801 was recently amended to make review hearings mandatory unless waived by the court after it determines that the record is sufficient to find the restrained party in compliance. See LAWS OF 2023, ch. 462, § 403. This amendment goes into effect on July 23, 2023. LAWS OF 2023, ch. 462.

form required by RCW 9.41.804 may serve as prima facie evidence of compliance, this document "does not, in itself, prove that the person has surrendered all of their weapons." Id. at 898. "[W]here the record contains conflicting evidence, the court must weigh that evidence and determine whether the restrained person has met his or her burden of proof." Id. at 899.

If, at the review hearing, the trial court finds that there is probable cause to believe the restrained party failed to fully comply with its order,

> pursuant to its authority under chapter 7.21 RCW, the court may initiate a contempt proceeding to impose remedial sanctions on its own motion, or upon the motion of the prosecutor, city attorney, or the petitioner's counsel, and issue an order requiring the respondent to appear, provide proof of compliance with the order, and show cause why the respondent should not be held in contempt of court.

RCW 9.41.801(7)(a).

We discussed in depth the restrained party's burden of proof in our decision in Braatz. Michael Braatz, the restrained party, was ordered to surrender all firearms and dangerous weapons after a domestic violence protection order was entered against him. Braatz, 2 Wn. App. 2d at 892. Initially, Michael filed a proof of surrender form stating that he surrendered the firearms in his possession, which consisted of two handguns and one hunting rifle. Id. Alexandra Braatz, the protected party, then filed a declaration stating that Michael stored his firearms at an armory. Id. at 893. Attached to the declaration was an inventory from the armory displaying the make, model, and serial number of 34 guns owned by Michael. Id. Alexandra then moved for contempt, asking that Michael be required to account for all 34 guns listed on the inventory. Id. at 894.

Prior to the contempt hearing, Michael filed a declaration stating, "[A]ll firearms listed in [Alexandra's] declaration are surrendered except for one which was owned by and in the possession of Dylan Hillman." Id. However, the receipt from local law enforcement was missing two of the firearms listed on the inventory. Id. The trial court nevertheless found that Michael was in compliance with its order. Id. at 895.

We reversed the decision of the trial court, holding that its finding of compliance was not supported by substantial evidence. Id. at 902. First, we held that any "efforts" to surrender firearms "are not relevant to" the determination of whether the restrained party was in compliance with the order to surrender weapons and that the trial court had erred to the extent it relied on Michael's efforts to comply. Id. at 899. Second, we held that Michael's declaration that he had surrendered all firearms except one owned by Mr. Hillman failed to account for all of the firearms shown to be previously in his possession. Id. at 900. Accordingly, we reversed the trial court's finding of compliance. Id. at 902.

Like Michael Braatz, and for the same reasons, Espinoza failed to meet his burden of proof to show that he was in compliance with the trial court's orders to surrender all firearms and dangerous weapons. In its order to show cause, the trial court specifically ordered Espinoza to "file a declaration of non-surrender accounting for grey/black handgun and silver handgun." Espinoza did not do so.[2]

---

[2] The trial court also previously ordered Espinoza to submit declarations from the persons who he claimed owned the handguns. Espinoza did not submit the ordered declarations.

11

The declaration filed by Espinoza states only, "[t]hat I do not own nor do I have access to the fire arms [sic] and or dangerous wepons [sic] that I am being accused of possessing." This declaration does not *account for* the "grey/black handgun and silver handgun" by any means. The declaration does not specifically reference either handgun, nor does it state what happened to either firearm. The declaration also does not state where the handguns were currently located and why they were no longer in Espinoza's possession, as the court specifically informed Espinoza he needed to include. Espinoza's generic declaration that he does not have access to the firearms he was "accused of possessing" is no more substantial evidence of compliance than was Michael Braatz's declaration that he had surrendered " 'all firearms listed in [Alexandra's] declaration.' " Id. at 894 (alteration in original).

Espinoza's in-court testimony similarly did not *account for* the two handguns, as all he testified to was that the handguns belonged to an alleged unidentified individual that he was no longer in contact with. Even accepting Espinoza's testimony as true, as we must in light of the court's credibility determination,[3] the evidence presented did not adhere to the court's prior orders to disclose the current whereabouts of the two handguns he was shown to have

---

Espinoza never claimed that compliance with this order was impossible; rather, he repeatedly stated that he "didn't want to bring them into it." Inability to comply with an order is an affirmative defense for which the restrained party has the burden of proof. Braatz, 2 Wn. App. 2d at 903 n.9. Refusal to comply is no defense at all. Moreover, Espinoza's repeated refusal to identify the persons he claimed owned the guns in answer to direct questioning by the court was driven not by a claimed inability to answer, but rather mere unwillingness to do so.

[3] See Miles v. Miles, 128 Wn. App. 64, 71, 114 P.3d 671 (2005).

previously possessed, did not account for the weapons, and did not go further than the evidence we held was insufficient in Braatz. Espinoza presented no evidence beyond what the court had already informed him was insufficient on three separate occasions. Thus, the superior court's finding that Espinoza was in compliance with its order to surrender all firearms and weapons was not supported by substantial evidence. We accordingly reverse and remand for further proceedings.

B

Sayson additionally asserts that the superior court erred by considering the State's failure to seek a search warrant in determining whether Espinoza was in compliance with its order to surrender firearms and dangerous weapons.[4] Sayson and amici[5] contend that by doing so, the superior court improperly shifted the burden of proof away from Espinoza. We hold that it was error for the court to rely upon a lack of State action in considering whether Espinoza proved that he was in compliance with the court's order and the court should not rely upon the lack of State action in determining whether Espinoza is in compliance on remand.

In its initial order on motion for reconsideration, the trial court noted that "[n]either the State, which has joined this motion for reconsideration, [n]or petitioner have sought a search warrant," and that "the absence of State action on

---

[4] In a letter to this court, Espinoza asserts that he was not afforded a fair hearing on the motion for reconsideration. Because Espinoza did not file a notice of cross appeal, we decline to consider this argument. RAP 2.4(a).

[5] Amici consist of the Family Violence Appellate Project, DV LEAP, Washington State Coalition Against Domestic Violence, National Center on Domestic and Sexual Violence, Eastside Legal Assistance Program, King County Sexual Assault Resource Center, Project DVORA | Jewish Family Service of Seattle, and Seattle University School of Law Family Law Center.

an issue it apparently believes that Mr. Espinoza is currently not being truthful about is noticeable." This order was subsequently vacated and a new order entered in its place. In the new order on motion for reconsideration, the trial court stated that it remained "convinced" the State would have sought a search warrant "promptly if probable cause existed that Mr. Espinoza currently possessed the weapons at issue."

RCW 9.41.801(4) states,

> Upon the sworn statement or testimony of the petitioner or of any law enforcement officer alleging that the respondent has failed to comply with the surrender of firearms or dangerous weapons as required by an order issued under RCW 9.41.800, the court shall determine whether probable cause exists to believe that the respondent has failed to surrender all firearms and dangerous weapons in their possession, custody, or control. If probable cause exists that a crime occurred, the court shall issue a warrant describing the firearms or dangerous weapons and authorizing a search of the locations where the firearms and dangerous weapons are reasonably believed to be and the seizure of all firearms and dangerous weapons discovered pursuant to such search.

This provision places the onus upon the superior court to issue a search warrant where probable cause exists to do so. It does not require, or even contemplate, that the petitioner or law enforcement should make an independent petition for a search warrant if they believe that the restrained party is not in compliance with the order to surrender firearms and dangerous weapons.

Nor does RCW 9.41.801 contemplate that the State should necessarily have a particular role in seeking a search warrant if it believes that the restrained party has not complied with the court's order. RCW 9.41.801(8)(a) permits a representative from the prosecuting attorney's office or city attorney's office to be

14

heard at a compliance hearing "[t]o help ensure that accurate and comprehensive information about firearms compliance is provided to judicial officers." The representative is not required to be an attorney. RCW 9.41.801(8)(b). The plain language of the statute indicates that the legislature intended the role of the prosecutor's office to be one of an information provider.

It is the restrained party's burden to prove that they are in compliance with the order to surrender firearms and dangerous weapons and the court's burden to take appropriate action if the evidence demonstrates that the restrained party is not in compliance with the order to surrender firearms and dangerous weapons. Neither the protected party nor the State has any burden to act on the restrained party's noncompliance. It follows that the circumstance of the State not having taken an action it had no responsibility to take is not evidence that a restrained person is in compliance under RCW 9.41.801. To hold otherwise would appear to place a burden on the prosecutor's office to act in each of these matters to avoid its not doing so being treated as evidence of the restrained person's compliance. The superior court erred by considering as evidence of compliance the State's failure to take an action that it had no responsibility to take.

III

Because the superior court's finding that Espinoza was in compliance with its prior orders that he surrender all firearms and dangerous weapons and account for the firearms that he claimed were not his is not supported by substantial

15

evidence, we reverse the order on compliance review and remand for further proceedings.

Birk, J.

WE CONCUR:

Feldman, J.

Mann, J.